Filed 5/22/13

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re TIMOTHY N., a Person Coming Under the Juvenile Court Law. | D061891 |
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>TIMOTHY N.,<br><br>　　Defendant and Appellant. | (Super. Ct. No. J225395) |

APPEAL from a judgment of the Superior Court of San Diego County, Carlos O. Armour, Judge.  Reversed and remanded.

Kleven McGann Law and Sara Elizabeth Kleven, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Deputy Attorney General, James Dutton, Meredith S. White, and Kimberley Donohue, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

Timothy N., a juvenile, pled guilty to one count of burglary of an inhabited dwelling, a felony, in exchange for the dismissal of five other counts and the agreement of the prosecutor that if Timothy "successfully complete[d] probation" the prosecutor would dismiss the residential burglary allegation and reduce the charge to a misdemeanor. The parties did not further define "successfully complete probation."

Among the conditions of probation was an order that Timothy and his parents be jointly and severally liable, together with the other boys involved in the burglary scheme, for restitution to the victims for their losses. The restitution totaled more than $20,000. After two years of probation, Timothy had fulfilled all of the other conditions of probation, and he and his parents and the other boys had paid approximately $1,500 of the total restitution owed. At a hearing, the trial court acknowledged that Timothy had performed successfully on probation and converted the remaining restitution obligation to the multiple victims into civil judgments against Timothy and his parents. The court then said that it was "terminat[ing] jurisdiction . . . successfully" based on the court's finding that "Timothy has complied with all the terms and conditions and he has terminated probation entirely successfully."

Upon a defense motion for dismissal of the residential burglary allegation and reduction of the burglary charge to a misdemeanor, the prosecutor objected, arguing that Timothy had not successfully completed probation because the full amount of victim restitution had not been paid. The court denied the defense motion to enforce the plea

agreement on this ground. On appeal, the parties disagree as to whether Timothy "successfully complet[ed] probation," such that the People must honor their portion of the agreement.

Because there is no evidence that Timothy's failure to pay the full amount of the restitution was willful or that his failure to pay is attributable to any reason other than an inability to pay, and in view of the court's finding that Timothy fulfilled all of the conditions of probation with the exception of the restitution condition, which the court converted to a civil judgment, we conclude that, as a matter of law, Timothy "successfully complete[d] probation." We therefore reverse the trial court's order and remand the matter to the trial court to enforce the terms of the plea agreement.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Between September 7 through 9, 2009, Timothy and three friends broke into six different residences and stole items from each of the homes.[1]

The San Diego County District Attorney filed a complaint against Timothy alleging six counts of burglary. (Pen. Code, § 459.)[2] The complaint further alleged that the burglaries were of inhabited dwellings. (§ 460.)

---

[1] Because Timothy entered an admission, there is no trial transcript. We therefore take the facts of the alleged offenses from the probation report. The facts of the underlying case are not relevant to the issue that Timothy raises on appeal.

[2] Further statutory references are to the Penal Code unless otherwise indicated.

On March 15, 2010, Timothy's attorney indicated to the court that Timothy was prepared to enter an admission with respect to count 1 and its corresponding allegation, "with the understanding that counts 2, 3, 4, 5, and 6 will be dismissed with a *Harvey*[3] waiver and restitution," and "[a]lso with the understanding that if Timothy successfully completed probation a [section] 460 allegation will be dismissed and the [section] 459 [charge] would be reduced to a misdemeanor pursuant to [section] 17[, subd.] (b)(4)." The court confirmed with Timothy that he was agreeing to admit to the allegations supporting count 1 and also admit the inhabited dwelling allegation in exchange for the terms that Timothy's attorney had recited.

Timothy proceeded to admit the truth of the allegation in count 1, as well as the inhabited dwelling allegation. The court dismissed the remaining counts with a waiver pursuant to *Harvey, supra,* 25 Cal.3d 754. The trial court then said to Timothy, "And the agreement is that should you successfully complete probation that at the time that your probation is completed the allegation making this a residential burglary would be dismissed and the [section] 459 burglary charge may be reduced to a misdemeanor pursuant to [section] 17[, subdivision] (b) of the Penal Code. Is that your understanding?" Timothy responded, "Yes."

The probation officer's social study report that was submitted to the court prior to the wardship hearing included a number of suggested conditions of probation, including that Timothy be ordered to perform 40 hours of community service, complete an anti-

---

[3]     *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*).

theft class, submit to substance abuse testing, participate in individual and family counseling, write letters of apology to the victims, attend an open house at Juvenile Hall, be prohibited from associating with gang members, and that he be "held responsible for any restitution ordered." With respect to the imposition of a fine, the probation officer noted, "Due to the family's limited income, it appears to the probation officer there are insufficient financial resources that support imposing a fine pursuant to [Welfare and Institutions Code section] 730.5."[4]

The court adjudged Timothy to be a ward of the court on April 7, 2010, and placed him on probation. The court imposed a number of probation conditions, including the conditions suggested in the probation officer's report. The probation conditions included the following:

> "The minor and his/her parents, [L.L.] and [H.N.] are presumed jointly and severally responsible for the payment of restitution, fines or penalty assessment.
>
> "[¶] . . . [¶]
>
> "The minor and companion(s) . . . are jointly and severally responsible for the payment of restitution to the victim(s)."

---

[4]     Welfare and Institutions Code section 730.5 provides in relevant part: "When a minor is adjudged a ward of the court on the ground that he or she is a person described in Section 602, in addition to any of the orders authorized by Section 726, 727, 730, or 731, the court may levy a fine against the minor up to the amount that could be imposed on an adult for the same offense, if the court finds that the minor has the financial ability to pay the fine."

The juvenile court held a victim restitution hearing on June 7, 2010. At that hearing, the parties agreed that the appropriate amount of victim restitution for the crimes against the six victims was $21,113.53.

The court held an annual review hearing in Timothy's case on April 6, 2011. At that hearing, the court noted that Timothy had been doing very well on probation. Records indicated that Timothy had completed his 40 hours of community service, completed the anti-theft class, written apology letters to his victims, and attended a tour of juvenile hall. The court noted, however, that the victim restitution had yet to be paid. Timothy's attorney indicated that he was seeking another year of probation in order to allow Timothy to make more restitution payments and to avoid a civil judgment against him and his parents, and indicated that Timothy had "been consistently making payments and he is doing very well." The prosecutor stated, "As the court noted, the minor seems to be doing very well aside from the restitution. So I will submit to the court's discretion" as to the request to extend probation. The court agreed to extend Timothy's probation and converted it to probation to the court so that he would no longer be reporting to a probation officer, but, instead, to the court directly. The court indicated its hope that Timothy and his companions could "get this [restitution] knocked down in the next year."

The court held another review hearing in the case approximately a year later, on April 5, 2012. The court indicated that the victim restitution balance was $19,733.13, which meant that approximately $1,380 had been paid. Timothy's attorney indicated to the court that Timothy's parents had become unemployed during the previous year and that it was unlikely that Timothy and his parents would be able to pay the full restitution

6

amount even if they were given another year to try to do so. Timothy's attorney asked the court to find that Timothy had successfully completed probation, and to convert the restitution order into a civil judgment against Timothy and his parents. The trial court asked the prosecutor to respond, and the following colloquy occurred:

> "[Prosecutor]: Well, Your Honor, we need a J.V. 790[5] and I will submit on the rest. These are always bad situations with multiple defendants and of course a victim that has not been reimbursed for her losses.[6]
>
> "The Court: I will go ahead and terminate jurisdiction successfully. Ask probation to prepare a J.V. 790 for the balance of the restitution.
>
> "[Defense Counsel]: Your Honor, previously I believe there was an agreement with the People that upon successful completion they would strike the 460 allegation and 17(b).
>
> "[Prosecutor]: I am going to disagree with that. There is no—there is so much restitution that hasn't been paid I would disagree, especially reducing it to a misdemeanor. The victim remains terribly unwhole.
>
> "The Court: That's a contractual issue between you and the D.A. as far as their agreement. What they consider successful termination is not what I necessarily consider successful termination.
>
> "[Defense Counsel]: I mean, again, the agreement was if Timothy successfully completed probation that would be stricken and the felony charge would be reduced to a misdemeanor. That was the bargain entered. Restitution is restitution and at some point Your Honor can't get blood from a turnip. The family is out of work. They had made a handful of efforts to pay off as much as they can.

---

5    The reference to "a J.V. 790" appears to relate to the standard Judicial Council form No. CR-110/JV-790, which is entitled "Order for Restitution and Abstract of Judgment."

6    In fact it appears from the record that there remained multiple victims who had not yet been not fully reimbursed for their losses.

There are co-participants. They paid as much as they are able at this point. It is not simply a matter of the family not wanting to pay the restitution. This is a matter of Timothy not being able to. They simply don't have the financial resources for it and they understand that it will affect their credit moving forward, but we would ask for specific performance with the plea bargain that Timothy entered into.

"[Prosecutor]: Let me reverse. I didn't actually say what I thought. I think it should be without comment. There w[ere] six residential burglaries, six, and basically I submitted on the court doing a successful [termination]. I don't really agree with it when they don't pay restitution because, you know, there are six victims that are suffering today and are unlikely to ever be reimbursed. So I actually think it is without comment in the first place.

"The Court: The reason that I gave him a successful [termination] is because as far as the other conditions of probation [go,] he satisfied them. So [I'm] giving him a break on that. The People make a point if he has not satisfied all the conditions of probation and there [are] still approximately six victims at least out there that are owed about $20,000 in restitution that have not been made whole. So I really can't force the D.A. to agree to my assessment that Timothy has complied with all the terms and conditions and he has terminated probation entirely successfully. [¶] So if you want to bring a motion and challenge the D.A. on their situation you can do that but I am not going to force them to do that today.

"[Defense Counsel]: Very well. Then while we are here can we calendar this for a motion for specific performance[?]

"[Prosecutor]: I would ask that it be given without comment, Your Honor.

"The Court: Well, I think—

"[Prosecutor]: By the way, I don't know who gave this long ago. This forces the issue of the People to start insisting on full payment of every restitution case if it is going to be a successful completion of probation because I have to respect that the victims are so harmed.

"The Court: I am trying to see whether I should just terminate and let you bring it up on an appeal or appeal from the court's order or

keep the case active and hear a motion. I am trying to see what would be appropriate.

"[Defense Counsel]: Your Honor, again, it is similar in many ways to the court hearing a sealing of records. I mean, the court has terminated probation but this is—I think the court would still have jurisdiction to modify or enforce a plea bargain when probation is over.

"The Court: But it would be a rehearing in front of me? Right now I am denying your motion. You are asking me to force a D.A. to do something they feel was not within the bargain and I am denying your request, so that's a final order. So you will be asking for a rehearing of that order?

"[Defense Counsel]: I understand the court's interpretation.

"The Court: I think it would be better—

"[Defense Counsel]: If you prefer I can take it on appeal.

"The Court: I think it is better if I just terminate him successfully to the extent he has done everything but the restitution and I feel his behavior warrants that he terminate probation successfully. However, the victims are still outstanding almost $20,000 in restitution. I don't think that as far as a D.A.'s contractual obligation [goes] that he has satisfied that because there is still $19,000, almost $20,000 in restitution and the court is giving him a little bit of a break in terminating him successfully so that he can move on with his life and makes it easier to seal the record and move on. But as far as the contractual obligations to the D.A., I find that he has not met [those] and that is the court's final order. So I will terminate jurisdiction this morning successfully."

The court entered separate restitution orders as to each victim pursuant to Welfare and Institutions Code section 730.6, subdivisions (h) and (i), and Penal Code section 1214 (which together ensure that restitution owed to a victim that remains unpaid at the end of the probationary term is enforceable as if it were a civil judgment). The minute order for that day states that the court "finds" that "[t]he minor has successfully complied

9

with his/her conditions of probation" and indicates that the court terminated jurisdiction over Timothy. The minute order also states that the defense motion to enforce the plea agreement was denied.

Timothy filed a timely notice of appeal.

## III.

## DISCUSSION

As described on the record by the trial court, in addition to the agreement to dismiss counts 2 through 6 of the petition in exchange for Timothy's admission of guilt on count 1, the plea agreement provided that if Timothy "successfully complete[s] probation," then "at the time that . . . probation is completed" the allegation making the offense a residential burglary would be dismissed and the burglary charge in count 1 would be reduced to a misdemeanor pursuant to section 17, subdivision (b)(4).[7] The

---

7     Section 17, subdivision (b)(4) provides:

> "(b) When a crime is punishable, in the discretion of the court, either by imprisonment in the state prison or imprisonment in a county jail under the provisions of subdivision (h) of Section 1170, or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances:

> "[¶] . . . [¶]

> "(4) When the prosecuting attorney files in a court having jurisdiction over misdemeanor offenses a complaint specifying that the offense is a misdemeanor, unless the defendant at the time of his or her arraignment or plea objects to the offense being made a misdemeanor, in which event the complaint shall be amended to charge the felony and the case shall proceed on the felony complaint."

question at issue in this appeal is whether Timothy is entitled to dismissal of the section 460 allegation and reduction of the section 459 allegation to a misdemeanor, pursuant to the terms of the plea agreement. The parties dispute whether Timothy "successfully complete[d]" his probation, since one condition of probation was that he and his parents, together with his cohorts, would be jointly and severally liable for restitution to the victims.

The People maintain that "successful completion" of probation "requires the successful completion of *all* the terms and conditions of probation." (Italics added.) The People further contend that "[t]his definition [of 'successful completion of probation'] best captures the mutual intent of the parties at the time the plea agreement was reached." The People assert that "[u]ndoubtably, had the parties been asked at that time whether 'successful completion' of probation meant completion of some of the terms or all of the terms, they would have agreed it meant the successful completion of all the terms of probation." Timothy disagrees with this assessment, and argues that the trial court's finding that he successfully complied with the conditions of probation and the court's subsequent termination of jurisdiction over him amount to the successful completion of probation.

"A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles. [Citations.]" (*People v. Shelton* (2006) 37 Cal.4th 759, 767.) " 'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.] . . . ' [Citation.]" (*Ibid.*) However, " '[e]vidence of the undisclosed subjective intent of the parties is irrelevant to determining the meaning of

11

contractual language.' [Citation.] 'It is the outward expression of the agreement, rather than a party's unexpressed intention, which the court will enforce. [Citation.]' [Citation.]" (*Salehi v. Surfside III Condominium Owners Assn.* (2011) 200 Cal.App.4th 1146, 1159; see also *People v. Toscano* (2004) 124 Cal.App.4th 340, 345 (*Toscano*) [plain and unambiguous terms of plea bargain cannot be altered by parol evidence].)

"[I]nterpretations of [a plea agreement] contract must be based on an objective standard in which [the defendant's] 'reasonable beliefs' control. [Citations.]" (*Toscano, supra,* 124 Cal.App.4th at p. 345.) "[P]lea agreements are interpreted according to the general rule 'that ambiguities are construed in favor of the defendant. Focusing on the *defendant's* reasonable understanding also reflects the proper constitutional focus on what induced the *defendant* to plead guilty.' [Citation.]" (*Ibid*.)

The trial court imposed a number of conditions of probation on Timothy. One of those conditions was that Timothy and his parents pay restitution to the victims of Timothy's crimes pursuant to Welfare and Institutions Code section 730.6, which is the juvenile offender counterpart to the victim restitution provision for adult offenders codified in Penal Code section 1202.4. Welfare and Institutions Code section 730.6 establishes that it is the Legislature's intent that the victim who incurs any economic loss as the result of a minor's criminal conduct that results in the minor being determined to be a ward pursuant to Welfare and Institutions Code section 602 receive restitution directly from that minor. (Welf. & Inst. Code, § 730.6, subd. (a)(1).) The statute requires the court to order such a minor to pay both a restitution fine and direct restitution to the victim or victims in accordance with subdivision (h) of that section. (*Id*., subd. (a)(2).)

12

Subdivision (h) of section 730.6 of the Welfare and Institutions Code provides that absent "compelling and extraordinary reasons," the court must order full restitution and specifies that "[a] minor's inability to pay shall not be considered a compelling or extraordinary reason not to impose a restitution order, nor shall inability to pay be a consideration in determining the amount of the restitution order." Thus, the trial court in this case was required to impose restitution in the amount of the victims' losses, and was not permitted to consider Timothy's inability to pay the restitution amount in making the restitution order.

Welfare and Institutions Code section 730.6 also ensures that a victim restitution order imposed by the court pursuant to subdivision (a)(2)(B) is enforceable "as a civil judgment" (subd. (i)) and continues to be enforceable even after a minor is no longer on probation, until the obligation is fully satisfied. (*Id*., subds. (i), (*l*), (r).) Specifically, subdivision (r) of Welfare and Institutions Code section 730.6 provides that a victim restitution order reduced to a judgment "may be enforced in the manner provided in Section 1214 of the Penal Code," which in turn provides that a victim restitution order "shall be fully enforceable by a victim as if the restitution order were a civil judgment, and enforceable in the same manner as is provided for the enforcement of any other money judgment." (Pen. Code, § 1214, subd. (b).)

Finally, as is relevant to our discussion, Welfare and Institutions Code section 730.6 clarifies that the court may not revoke a minor's probation on the ground that he or she has failed to pay the victim restitution as required by the court, unless the court finds

that the minor has willfully refused to pay or has not made sufficient bona fide efforts to acquire the funds necessary to fulfill the obligation:

> "Probation shall not be revoked for failure of a person to make restitution pursuant to this section as a condition of probation unless the court determines that the person has willfully failed to pay or failed to make sufficient bona fide efforts to legally acquire the resources to pay." (*Id*., subd. (m).)

It is undisputed that Timothy did not pay the full amount of restitution during the period of probation. The parties now dispute the effect of this fact on their agreement. Specifically, the parties disagree as to the proper interpretation of the phrase "successfully complete probation," a phrase that appears to have no standard meaning and is ambiguous. The People contend that the parties always envisioned that Timothy would have to pay the full amount of restitution in order to be considered to have "successfully complete[d] probation" and thus be eligible to receive the benefit of the bargain. However, resolving the ambiguity of the phrase "successfully complete probation" in Timothy's favor, as we must, we conclude that Timothy would have reasonably believed that he would be deemed to have "successfully complete[d] probation" if he completed his term of probation without having engaged in conduct that provided a basis for the court to revoke his probation. Timothy clearly met this standard.

The trial court specifically found that Timothy had successfully completed probation by performing well with respect to all of the terms and conditions that the court had imposed, and that the only condition of probation that Timothy had not met was full payment of the significant restitution amount. Specifically, the court stated said that it

14

was the court's "assessment that Timothy has complied with all the terms and conditions and he has terminated probation entirely successfully."

The fact that Timothy was unable to pay the full the restitution amount during his probationary period does not provide a basis for a finding that he failed to successfully complete probation. The statutory framework specifically accounts for a situation in which a defendant is *unable* to pay the court-ordered restitution amount within the term of probation; the Legislature has clarified that an individual's inability to fulfill the restitution obligation *does not provide a basis for revoking that individual's probation*. (See Welf. & Inst. Code, § 730.6, subd. (m).)

There is no evidence that Timothy's failure to pay the full restitution amount was willful, or that he failed to make sufficient bona fide efforts to obtain the resources to pay the full amount of restitution during his period of probation. In fact, the evidence is to the contrary—i.e., the evidence shows that Timothy and his family lacked adequate resources to be able to pay the full restitution amount during the probationary period. In the absence of evidence that Timothy's failure to pay more restitution was willful or that he failed to make a bona fide effort to pay, the trial court could not have revoked his probation based on a failure to pay restitution. The court's only options were to extend the probation period or to terminate probation. The trial court chose to terminate Timothy's probation. This termination was necessarily successful; Timothy fulfilled all

15

of the other terms of probation, and the court could not have revoked his probation based on his failure to fulfill the restitution condition.[8]

The People cite *People v. Chandler* (1988) 203 Cal.App.3d 782 (*Chandler*), arguing that the case is instructive on this issue. In *Chandler*, the trial court terminated the defendant's probation upon the conclusion of the probation term, despite the fact that the defendant had failed to pay some of his monthly restitution payment obligations and had not yet finished paying court-ordered restitution. (*Id*. at pp. 785-786.) The defendant subsequently sought to have his conviction "expunged" pursuant to section 1203.4. (*Chandler, supra,* at pp. 785-786.) Section 1203.4 provides in relevant part:

> "In any case in which a defendant has fulfilled the conditions of probation for the entire period of probation, or has been discharged prior to the termination of the period of probation, or in any other case in which a court, in its discretion and the interests of justice, determines that a defendant should be granted the relief available under this section, the defendant shall, at any time after the termination of the period of probation, if he or she is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere and enter a plea of not guilty; or, if he or she has been convicted

[8] The Legislature has elsewhere defined the phrase "successfully complete probation" in a manner that does not require the successful completion of every condition of probation. Specifically, in enacting Megan's Law, the Legislature defined "successfully completed probation" as follows: "For the purposes of this subparagraph, 'successfully completed probation' means that during the period of probation the offender neither received additional county jail or state prison time for a violation of probation nor was convicted of another offense resulting in a sentence to county jail or state prison." (§ 290.46, subd. (e)(2)(D)(iv).) Although the Megan's Law requirements do not apply in this case, we point to this language because this definition of what constitutes "successful completion of probation" demonstrates an instance in which an individual may be found to have successfully completed probation even if the person may not have fully complied with each and every condition of that probation.

16

after a plea of not guilty, the court shall set aside the verdict of guilty; and, in either case, the court shall thereupon dismiss the accusations or information against the defendant and except as noted below, he or she shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted, except as provided in Section 13555 of the Vehicle Code. . . ."  (§ 1203.4, subd. (a).)

Under this statute, there are three circumstances under which a defendant may obtain relief: (1) where the defendant "has fulfilled the conditions of probation for the entire period of probation"; (2) where the defendant "has been discharged prior to the termination of the period of probation"; or (3) where a court determines that the defendant "should be granted relief" in the court's "discretion and the interests of justice." (§ 1203.4, subd. (a); see also *People v. Johnson* (2012) 211 Cal.App.4th 252, 262.)

In *Chandler*, although the defendant's probation terminated at the expiration of the probationary term and he had not committed any other violations of his probation, the defendant had failed to comply with the restitution condition.  The trial court denied the defendant relief under section 1203.4 based on the fact that the defendant had not paid the full amount of restitution prior to the termination of his probation.  (*Chandler*, *supra*, 203 Cal.App.3d at p. 789.)  On appeal, the defendant argued that the trial court's decision to terminate his probation at the end of the term, rather than to extend the period in order to allow him the opportunity to try to pay the remainder of the unpaid restitution, amounted to "a full discharge of all of the restraints and conditions of his probation," and thus entitled the defendant to relief under section 1203.4.  (*Chandler*, *supra*, at p. 789.)  The appellate court disagreed with this reasoning, concluding that the facts established that the defendant "had not satisfied the probation condition on restitution" and therefore he

17

did not meet "the statutory requirement of fulfilling 'the conditions of his probation for the entire period thereof . . . .' " (*Ibid.*)

In contrast with the agreement as issue in this case, which requires merely that Timothy "successfully complete probation," the statutory language at issue in *Chandler* specifically requires that a defendant successfully complete *every condition of probation* for "the entire period" of probation. If the People had intended to ensure that Timothy would not be able to have his residential burglary conviction reduced to a nonresidential misdemeanor burglary conviction unless he paid the full amount of restitution prior to the termination of his probation, the People could have insisted that the plea agreement require that Timothy fulfill every condition of probation, including paying the restitution in full during the period of probation. Given that the plea agreement said nothing more about what was required of Timothy other than that he "successfully complete probation," we conclude that Timothy would have reasonably believed that he would be found to have complied with the terms of the agreement if he completed the probationary term without engaging in any conduct that provided a basis for revoking his probation. Timothy fulfilled this requirement.

Although our decision allows Timothy to obtain the benefit of the plea bargain despite his failure to pay the full restitution amount during his probationary period, Timothy is not escaping his restitution obligations. As is clear from the record, Timothy and his parents will be required to pay the restitution pursuant to the trial court's orders, which the victims may enforce as they would a civil judgment. Thus, Timothy and his

18

family will continue to suffer significant consequences arising from Timothy's criminal behavior, even though the charges against him will have been reduced.

"When the breach [alleged] is a refusal by the prosecutor to comply with the agreement, specific enforcement would consist of an order directing the prosecutor to fulfill the bargain" and will be granted where there is a substantial possibility that specific performance will completely repair the harm caused by the prosecutor's breach. (*People v. Kaanehe* (1977) 19 Cal.3d 1, 13.) Because specific enforcement of the agreement in this situation will repair the harm caused by the People's breach, we conclude that specific performance of the plea agreement is the appropriate remedy. We therefore reverse the trial court's order denying Timothy's motion for specific performance of the plea agreement, i.e., dismissal of the section 460 allegation and reduction of the section 459 charge to a misdemeanor pursuant to section17, subdivision (b)(4).

## IV.

## DISPOSITION

The order of the trial court denying the defense motion to enforce the plea agreement is reversed.  The matter is remanded to the trial court to enforce the plea agreement by requiring the People to dismiss the section 460 allegation and to reduce the section 459 charge to a misdemeanor pursuant to section17, subdivision (b)(4) and to conduct further proceedings as necessary.

_____

AARON, J.

WE CONCUR:

_____

NARES, Acting P. J.

_____

MCDONALD, J.