OPINION
WARDLAW, Circuit Judge:
On December 8, 2005, Michael Daniel Cuero stood in open court before the Honorable Charles W. Ervin, Judge of the Superior Court in and for the County of San Diego, and pursuant to a written plea agreement, he freely and voluntarily pleaded guilty to one felony count of causing bodily injury while driving under the influence and one felony count of unlawful possession of a firearm. Cuero also admitted a single prior strike conviction[1] and four prison priors.[2] In exchange for Cuero’s waiver of his constitutional and numerous other rights, the prosecution dismissed a misdemeanor count, thereby guaranteeing Cuero a maximum.sentence of 14 years, 4 months in prison and 4 years of parole, as explained both in the written plea agreement, Appendix A, ¶ 7a, and by Judge Ervin during the plea colloquy. Judge Er-vin then accepted Cuero’s plea and admis-. sions, and set sentencing for January 11, 2006. That same day, Judge Ervin signed the Finding and Order, Appendix A at 3, stating that “the defendant is convicted thereby.”
Cuero stood convicted; “nothing remain[ed] but to give judgment and deter,mine punishment.” Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Under clearly established Supreme Court law, the plea agreement bound the government. See Mabry v. Johnson, 467 U.S. 504, 507-08, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984) (a defendant’s guilty plea “implicates the Constitution,” *883 not the “plea bargain standing aíone”); Santobello v. New York, 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (“[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.”); Boykin, 395 U.S. at 242, 244, 89 S.Ct. 1709 (“[A] plea of guilty is more than an admission of conduct; it is a conviction.”). In Cuero’s case, the government was bound by its agreement in open court that punishment could be no greater than 14 years, 4 months in prison. See Ricketts v. Adamson, 483 U.S. 1, 5 n. 3, 107 S.Ct. 2680, 97 L.Ed.2d 1 (1987) (“[T]he construction of [a] plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law.”); see also Buckley v. Terhune, 441 F.3d 688, 694 (9th Cir. 2006) (en banc) (“Under Santobello v. New York, 404 U.S. 257, 261-62, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), a criminal defendant has a due process right to enforce the terms of his plea agreement.”).
Improbably, the day before the scheduled sentencing, the state prosecutor moved to amend the criminal complaint to allege an additional prior strike conviction, which, if allowed, would result in an indeterminate 64 years to life sentence under California’s three strikes law.[3] Even more improbably, a different Superior Court judge than Judge Ervin permitted the amendment. Not only did the prosecution breach the plea agreement by seeking to amend the complaint after the deal was sealed, the Superior Court judge unreasonably applied clearly established Supreme Court authority by failing to recognize that the “breach [was] undoubtedly a violation of the defendant’s rights.” Puckett v. United States, 556 U.S. 129, 136, 129 S.Ct. 1423, 173 L.Ed.2d 266 (2009) (citing Santobello, 404 U.S. at 262, 92 S.Ct. 495). That the Superior Court allowed Cuero to withdraw his guilty plea and enter a new plea agreement calling for an indeterminate 25 years to life sentence was no remedy here; Cuero lost the benefit of his original bargain.
Because the state court neither recognized nor applied clearly established Supreme Court authority, and acted in contravention of that authority, we reverse the judgment of the district court denying Cuero’s habeas petition, and we remand with instructions to issue the writ of habe-as corpus.
I. Jurisdiction and Standard of Review[4]
We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. We review de novo a district court's denial of a habeas petition. Hurles v. Ryan, 752 F.3d 768, 777 (9th Cir. 2014). Because Cuero filed his federal habeas petition after April 24, 1996, the Anti-Terrorism and Effective Death Penalty Act (“AEDPA”) governs our review. Id.
AEDPA bars relitigation of any claim adjudicated on the merits in state court, unless the state court’s decision satisfies the exceptions contained in 28 U.S.C. §§ 2254(d)(1) or (2). Harrington v. Richter, 562 U.S. 86, 98, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). Those exceptions authorize a grant of habeas relief where the *884 relevant state-court decision was (1) “contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court” or (2) “based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.” 28 U.S.C. §§ 2254(d)(1), (2).
“[A] state-court decision is contrary to Federal law ’if the state court arrives at a conclusion opposite to that reached by th[e Supreme] Court on a question of law,’ or ’the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court].’ ” Murray v. Schriro, 745 F.3d 984, 997 (9th Cir. 2014) (alterations in original) (quoting Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)). “A state-court decision is an ’unreasonable application’ of Supreme Court precedent if ’the state court identifies the correct governing legal rule from th[e Supreme] Court’s cases but unreasonably applies it to the facts of the particular state prisoner’s case,’ or ’the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.’ ” Id. (alterations in original) (quoting Williams, 529 U.S. at 407,120 S.Ct. 1495).
We review the last reasoned decision of the state courts. “When a state court does not explain the reason for its decision, we ’look through’ to the last state-court decision that provides a reasoned explanation capable of review.” Id. at 996 (quoting Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000)). Where a reasoned state-court decision exists, we do not “evaluate all the hypothetical reasons that could have supported the high court’s decision.” Cannedy v. Adams, 706 F.3d 1148, 1157 (9th Cir.), amended on denial of reh’g by 733 F.3d 794 (9th Cir. 2013); see also id. at 1159 (“Richter does not change our practice of ’looking through’ summary denials to the last reasoned decision — whether those denials are on the merits or denials of discretionary review.” (footnote omitted)); Medley v. Runnels, 506 F.3d 857, 862-63 (9th Cir. 2007) (en banc) (Judge Callahan writing for the majority). Here, we evaluate the San Diego Superior Court’s decision to grant the prosecution’s motion to amend the complaint following Cuero’s entry of his original guilty plea and his conviction based on that plea.[5]
II. Discussion

A. Cuero entered a binding, judicially approved plea agreement and stood convicted.

Under clearly established Supreme Court law, Cuero stood convicted and his plea agreement became binding the moment the first Superior Court judge accepted his guilty plea. “A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction.” Boykin, 395 U.S. at 242, 89 S.Ct. 1709. And “[w]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.” Santobello, 404 U.S. at 262, 92 *885 5.Ct. 495 (emphasis added); see also Peter Westen & David Westin, A Constitutional Law of Remedies for Broken Plea Bargains, 60 Calif. L. Rev. 471, 474 (1978) (citing the language quoted above as the “undisputed holding” of Santobello). A defendant’s guilty plea thus “implicates the Constitution,” transforming the plea bargain from a “mere executory agreement” into a binding contract. Mabry, 467 U.S. at 507-08, 104 S.Ct. 2543.[6] In other words, a guilty plea seals the deal between the state and the defendant, and vests the defendant with “a due process right to enforce the terms of his plea agreement.” Buckley, 441 F.3d at 694 (citing Santobello, 404 U.S. at 261-62, 92 S.Ct. 495); see also Doe v. Harris, 640 F.3d 972, 975 (9th Cir. 2011); Brown v. Poole, 337 F.3d 1155, 1159 (9th Cir. 2003).
In Buckley v. Terhune, our court, sitting en banc, affirmed a grant of habeas relief pursuant to 28 U.S.C. § 2254(d)(1) that ordered specific enforcement of the terms of a plea agreement. 441 F.3d at 691. There, the state prosecutor offered a plea bargain: Buckley would provide cooperating testimony against his codefendants in return for which the prosecutor would dismiss his robbery and burglary charges and reduce the first degree murder charge against him to second degree. Id. Attached to the offer was a felony disposition statement that stated, under “Consequences of the Plea,” that Buckley could be sentenced to a “maximum possible term of 15 years.” Id. Buckley signed the plea agreement, initialing the maximum sentence line on December 17, 1987. Id. At some point before the change of plea hearing on January 4, 1988, the state prosecutor, on his own and without Buckley’s knowledge, added a handwritten paragraph to the disposition statement stating that the sentence would be a “maximum term of 15 years to life.” Id. at 691-92. Just as in Cuero’s case, during the guilty plea colloquy pursuant to the plea bargain, the state court told Buckley that he could be sentenced to state prison for a “maximum possible term of fifteen years.” Id. at 692. Following the trial of his codefendants in which Buckley “complied with the terms of the negotiated disposition,” according to the state prosecutor, the court sentenced Buckley to a prison term of 15 years to life. Id. at 693. And, again, just as in Cuero’s case, the last reasoned state court decision failed to “interpret Buckley’s plea agreement according to California contract law.” Id. at 691. We affirmed the district court’s grant of habeas relief because the state court’s failure was “contrary to clearly established Supreme Court law as set forth in Santo-bello v. New York ... and Ricketts v. Adamson,” satisfying § 2254(d)(l)’s “contrary to” exception. Id.
While the state prosecutor here did not act so underhandedly as Buckley’s, the same result obtained — Cuero performed his part of the bargain only to have the state renege on its. The state originally *886 charged Cuero with two felonies and a misdemeanor. It later amended the complaint to add a single prior strike conviction and four prison priors. Next, the parties entered into a written plea agreement through which the state induced Cuero to cede his constitutional and other rights and plead guilty in exchange for the state’s promise to drop the misdemeanor charge, thereby guaranteeing Cuero a “maximum [sentencing] exposure of 14 years, 4 months in state prison, 4 years on parole and a $10,000 fíne.” On December 8, 2005, the parties signed the plea agreement, which is on page three of the dissent’s Appendix A, and which, as in Buckley, under “Consequences of the Plea” set forth Cuero’s state-guaranteed maximum sentencing exposure. That same day, Judge Ervin held a change of plea hearing. The state prosecutor, Kristian Trocha, Cuero, and Cuero’s counsel, Alberto Ta-mayo, stood before Judge Ervin and expressed their mutual intent to “settle this case today.” The court received the charge sheet — i.e., the amended complaint, Appendix A.1, attached to the majority opinion — and asked counsel to what Cuero would be pleading. Cuero’s counsel, referring to the charge sheet, stated that Cuero would be pleading to “the sheet without the Count 3 misdemeanor.” Judge Ervin reiterated, “He’s going to plead guilty to everything on the charging document with the exception of Count 3.” The judge next indicated that “It is a sentence for the Court, no deals with the people,” meaning that the plea agreement was as to the charge and not to the specific sentence.[7] Both the prosecutor and defense counsel *887 assented.[8] Cuero was then placed under oath and asked by Judge Ervin “Did you hear the plea agreement that I described?” Following Cuero’s affirmative response, the court asked, “Is it your full and complete understanding to settle this case today?” The court went on to review the forms, the dissent’s Appendix A, with Cue-ro, asking Cuero again to inform him that he “wish[ed] to accept the agreement to this case, written on the blue form,” and to confirm Cuero “sign[ed] his name,” “place[d] his initials in these boxes,” and “put his thumb print on it.” Again, following Cuero’s affirmative responses, the court stated, “In addition to the plea agreement, the document [Appendix A to the dissent] sets forth and describes constitutional rights that you enjoy.” See Appendix A at 1. The court next informed Cuero that 14 years, 4 months in prison was the “maximum punishment [he] could receive,” and Cuero pleaded guilty to the two felonies and admitted his single strike and four prison priors. The court accepted the plea. The court then turned to the prosecutor, Mr. Trocha, and asked, “Peo-pie’s motion as to the misdemeanor count, which is Count 3?” Mr. Trocha stated, “Dismiss in light of the plea.” The court then granted the state’s motion “in light of the plea,” accepted “the defendant’s plea and admissions,” and concluded that “the defendant is convicted thereby.” Nothing more was required to consummate Cuero’s plea agreement; it “was accepted and final ... at the moment that the judge made the requisite factual findings and accepted the plea.” Brown, 337 F.3d at 1159. And the prosecution was bound by the agreement’s terms, which it acknowledged by immediately moving to dismiss the misdemeanor charge.[9]

B. The prosecution breached the court-approved plea agreement by attempting to amend the complaint.

Although the prosecution initially honored its promise to dismiss the misdemeanor charge, it then breached the plea agreement by moving to amend the complaint to charge Cuero’s prior assault conviction as a second strike. The Superior *888 Court acted contrary to clearly established Supreme Court law by permitting the amendment and refusing to enforce the original plea agreement.
“[T]he construction of [a] plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law.” Adamson, 483 U.S. at 5 n. 3, 107 S.Ct. 2680; see also Buckley v. Terhune, 397 F.3d 1149, 1161-62 (9th Cir. 2005) (Bea, J., dissenting) (“At the time of the state habeas proceeding, clearly established Federal law, as determined by the Supreme Court, made the interpretation and construction of a plea agreement a matter of state law.” (citing Adamson, 483 U.S. at 5 n. 3, 107 S.Ct. 2680)), majority rev’d en banc, 441 F.3d 688 (9th Cir. 2006); see also Puckett, 556 U.S. at 137, 129 S.Ct. 1423 (“[P]lea bargains are essentially contracts.”). “Under AEDPA, we ... must consider whether the [state court] decision is consistent with a proper application of state contract law in interpreting the plea agreement; if not, the decision was an ’unreasonable application of clearly established federal law.” Davis v. Woodford, 446 F.3d 957, 962 (9th Cir. 2006) (citing, inter alia, Adamson, 483 U.S. at 5 n. 3, 107 S.Ct. 2680). In Buckley, we noted that as of 1999, when the state court summarily denied Buckley’s habeas petition, the obligation to construe plea agreements according to state contract law “had been clearly established federal law for more than a decade.” 441 F.3d at 694-95 (quoting Adamson, 483 U.S. at 6 n. 3, 107 S.Ct. 2680).[10]
Under California law, “[a] plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound.” People v. Segura, 44 Cal.4th 921, 80 Cal. Rptr.3d 715, 188 P.3d 649, 656 (2008) (quoting People v. Ames, 213 Cal.App.3d 1214, 261 Cal.Rptr. 911, 913 (1989)). Thus, “[a] negotiated plea agreement ... is interpreted according to general contract principles.” People v. Shelton, 37 Cal.4th 759, 37 Cal.Rptr.3d 354, 125 P.3d 290, 294 (2006). Under California law, “[a] contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting.” Cal. Civ. Code § 1636. A contract’s “clear and explicit” language governs its interpretation. Id. § 1638. Moreover, “[although a plea agreement does not divest the court of its inherent sentencing discretion, ’a judge who has accepted a plea bargain is bound to impose a sentence within the limits of that bargain.’ ” Segura, 80 Cal. Rptr.3d 715, 188 P.3d at 656 (quoting Ames, 261 Cal.Rptr. at 913).
The terms of Cuero’s plea agreement were “clear and explicit”: Cuero promised to plead guilty to two felonies, a prior strike, and four prison priors; in exchange, the state promised to drop the misdemean- or charge. By seeking to amend the charges in the complaint, the prosecution denied Cuero the benefit of his bargain: a maximum sentence of 14 years and 4 *889 months. And, as a result of the amendment, the Superior Court ultimately imposed an indeterminate life sentence well beyond the limits of the plea agreement.[11]
Moreover, the agreement said nothing about altering the foundational assumption on which the bargain was struck — namely, the set of charges alleged in the criminal complaint. See People v. Walker, 54 Cal.3d 1013, 1 Cal.Rptr.2d 902, 819 P.2d 861, 867 (1991) overruled on other grounds by People v. Villalobos, 54 Cal.4th 177, 141 Cal.Rptr.3d 491, 277 P.3d 179 (2012) (“When a guilty plea is entered in exchange for specified benefits such as the dismissal of other counts or an agreed maximum punishment, both parties, including the state, must abide by the terms of the agreement.”). Such an implied term would render the agreement illusory by providing the state unfettered license to terminate it. See Sateriale v. R.J. Reynolds Tobacco Co., 697 F.3d 777, 791 (9th Cir. 2012) (“[A]n enforceable termination clause that gives a promisor an unrestricted power to terminate a contract at any time, without notice, renders the promise illusory and unenforceable, at least so long as the purported contract remains wholly executory.”). This outcome is inconsistent with California contract law, which prefers an “interpretation which gives effect” to a contract over one that would render it void. Cal. Civ. Code § 3541.[12]
As in Buckley, where we noted that the state court’s decision denying habeas neither mentioned state contract law nor referred to the terms of the plea agreement, nothing in the second Superior Court judge’s decision permitting the state prosecutor’s amendment here suggests that it understood it was dealing with a binding plea agreement, let alone that it was constitutionally obligated to construe the agreement in accordance with state contract law. See Buckley, 441 F.3d at 696. Tellingly, the Superior Court permitted the amendment in reliance on two state cases: People v. Superior Court (Alvarado), 207 Cal.App.3d 464, 255 Cal.Rptr. 46 (1989), and People v. Jackson, 48 Cal.Rptr.2d 838 (Ct. App.), review granted and *890 opinion superseded, 52 Cal.Rptr.2d 281, 914 P.2d 831 (Cal. 1996). Although both cases address the propriety of permitting amendment of a complaint after a defendant enters a guilty plea, neither addresses the propriety of such amendment after a defendant enters a guilty plea induced by a prosecutorial promise — i.e., pursuant to a plea bargain — and it has been approved by the court.[13] See Jackson, 48 Cal.Rptr.2d at 840 (“[T]he court took Jackson’s plea to the face of the complaint.”); Alvarado, 207 Cal.App.3d at 471, 255 Cal. Rptr. 46 (noting that the transcript of the plea colloquy “does not indicate any plea bargain”). In other words, neither Alvarado nor Jackson discusses the scenario present here, where the court-approved guilty plea was entered pursuant to a written plea agreement. Indeed, neither case contains so much as a hint that the court was applying California contract law. Thus, by failing to interpret Cuero’s plea agreement consistently with California contract law, the Superior Court unreasonably applied federal law clearly established by the Supreme Court in Adamson nearly thirty years ago.

C. Allowing Cuero to withdraw his guilty plea was no remedy at all.

The Superior Court also unreasonably applied clearly established federal law by failing to order specific performance of Cuero’s plea agreement. A state court must supply a remedy for a breached plea agreement that comports with state contract law. See Puckett, 556 U.S. at 137, 129 S.Ct. 1423; Adamson, 483 U.S. at 5 n. 3, 107 S.Ct. 2680; Davis, 446 F.3d at 962. Under California law, the remedy for breach must “repair the harm caused by the breach.” People v. Toscano, 124 Cal.App.4th 340, 20 Cal.Rptr.3d 923, 927 (2004). “ ’When the breach [alleged] is a refusal by the prosecutor to comply with the agreement, specific enforcement would consist of an order directing the prosecutor to fulfill the bargain’ and will be granted where there is a substantial possibility that specific performance will completely repair the harm caused by the prosecutor’s breach.” In re Timothy N., 216 Cal.App.4th 725, 157 Cal.Rptr.3d 78, 88 (2013) (alteration in original) (quoting People v. Kaanehe, 19 Cal.3d 1, 13, 136 Cal.Rptr. 409, 559 P.2d 1028 (1977)). Under Buckley, which we are bound to follow, in a situation like that here, where the state has already received the benefit it bargained for — a plea of guilty and a conviction — specific performance is the best remedy, unless the defendant, whose choice it becomes, “elect[s] instead to rescind the agreement and take his chances from there.”[14] Buckley, 441 F.3d at 699 n. 11.
*891 Moreover, that the state court permitted Cuero to withdraw his plea did not “repair the harm” caused by the prosecutor’s breach. To the contrary: It exposed Cuero to the risk of going to trial and receiving an indeterminate 64 years to life sentence. This is hardly the “remedy” Cuero would have elected had he properly been given a choice. That Cuero was ultimately able to “bargain” for an indeterminate 25 years to life sentence does not alter the analysis; the state could not have lawfully pursued an indeterminate life sentence in the first place if it had not been allowed to breach the plea agreement. Again, Cuero had performed his part of the agreement by pleading guilty to the two felony charges, admitting a single prior strike, and conceding his four prison priors, giving the government the bargain it sought. Because Cuero had already performed, “fundamental fairness demands that the state be compelled to adhere to the agreement as well.” Brown, 337 F.3d at 1162 (citation omitted). Cuero is therefore entitled to the benefit of his original bargain: a maximum sentence of 14 years, 4 months in prison.
III. Conclusion
The San Diego Superior Court failed to recognize that Cuero’s entry and Judge Ervin’s acceptance of Cuero’s guilty plea pursuant to the written plea agreement was binding on both sides. By allowing the prosecution to breach the agreement, reneging on the promise that induced Cue-ro’s plea, the state court violated federal law clearly established by the Supreme Court in Santobello. It further violated clearly established federal law requiring construction of the plea agreement under state contract law. See Adamson, 483 U.S. at 5 n. 3, 107 S.Ct. 2680; Buckley, 441 F.3d at 697. Even worse, the last reasoned decision of the state courts relied on two inapposite state law cases and failed to even acknowledge, much less apply, the well-established Supreme Court authority that dictated the contrary result. This error had a “substantial and injurious effect” on Cuero, who is serving an indeterminate life sentence, the minimum term of which, 25 years, is well in excess of the 14 year, 4 month maximum promised by the government. See Brecht v. Abrahamson, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993) (citation omitted). Cuero is entitled to habeas relief..
Accordingly, the district court’s judgment denying Cuero’s petition for a writ of habeas corpus is reversed with instructions to issue a conditional writ requiring the state to resentence Petitioner in accordance with the original plea agreement within sixty days of the issuance of the mandate.
REVERSED and REMANDED.
APPENDIX A.1
*892 [[Image here]]
*893 [[Image here]]
*894 [[Image here]]
*895 [[Image here]]
*896 [[Image here]]

. "California’s current three strikes law consists of two virtually identical statutory schemes 'designed to increase the prison terms of repeat felons.’ ” Ewing v. California, 538 U.S. 11, 15, 123 S.Ct. 1179, 155 L.Ed.2d 108 (2003) (quoting People v. Superior Court of San Diego Cty. ex rel. Romero, 13 Cal.4th 497, 53 Cal.Rptr.2d 789, 917 P.2d 628, 630 (1996)). When Cuero was charged in 2005, the three strikes law required that a defendant with a single qualifying conviction, i.e., a single strike, "be sentenced to 'twice the term otherwise provided as punishment for the current felony conviction.’ ” Id. at 16, 123 S.Ct. 1179 (quoting Cal. Penal Code §§ 667(e)(1), 1170.12(c)(1)). If the defendant had two or more qualifying convictions, the law mandated "an indeterminate term of life imprisonment.” Id. (quoting Cal. Penal Code §§ 667(e)(2)(A), 1170.12(c)(2)(A)). See generally 3 B.E. Witkin et al., California Criminal Law §§ 428-429 (4th ed. 2012).

. California Penal Code § 667.5(b) requires a court to “impose a one-year term for each prior separate prison term or county jail term” served by a defendant. California courts refer to these prior terms of incarceration as "prison priors.” Cuero admitted serving four prison priors, resulting in the addition of four consecutive years to his sentence.

. Although the state also alleged two additional "serious felony” priors, it was the addition of the second strike that exposed Cuero to an indeterminate life sentence.

. Cuero properly exhausted on direct and collateral review his claims that the prosecutor breached the plea agreement in violation of his due process rights and that he received ineffective assistance of counsel. We do not reach the latter claim.

. On direct appeal, Cuero's appointed counsel filed a brief pursuant to People v. Wende, 25 Cal.3d 436, 158 Cal.Rptr. 839, 600 P.2d 1071 (1979) (en banc), and Anders v. California, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). The California Court of Appeal affirmed Cuero's conviction and sentence in an unpublished, unreasoned opinion, finding "no reasonably arguable appellate issue.”

. Although Mabry clarified the constitutional significance of a consummated plea agreement, insofar as Cuero’s case is concerned, it did nothing more. As the dissent points out, Mabry involved a "prosecutor’s withdrawn offer." 467 U.S. at 510, 104 S.Ct. 2543 (emphasis added). In Mabry, the prosecution had offered the defendant more lenient sentencing terms in exchange for his guilty plea and, when the defendant attempted to accept the offer, the government withdrew it. Id. at 505-06, 104 S.Ct. 2543. The defendant then opted to stand trial and, following a mistrial, pleaded guilty on entirely different terms. Id. at 506, 104 S.Ct. 2543. Unsurprisingly, the Ma-bry court refused to enforce the prosecutor’s original, withdrawn offer — the defendant’s guilty plea "was in no sense induced by the prosecutor’s withdrawn offer,” id. at 510, 104 S.Ct. 2543, and that "executory agreement” was not made binding through an “ensuing guilty plea,” id. at 507, 104 S.Ct. 2543.

. Two types of plea bargains exist: charge bargains and sentence bargains. Charge bargains "consist[ ] of an arrangement whereby the defendant and prosecutor agree that the defendant should be permitted to plead guilty to a charge less serious than is supported by the evidence.” 5 Wayne R. LaFave et al., Criminal Procedure § 21.1(a) (4th ed. 2015). Sentence bargains "involve[] an agreement whereby the defendant pleads 'on the nose,’ that is, to the original charge, in exchange for some kind of promise from the prosecutor concerning the sentence to be imposed.” Id.) see also United States v. Miller, 722 F.2d 562, 563 (9th Cir. 1983) (explaining that charge bargains are "predicated upon the dropping of counts,” whereas sentence bargains are "predicated either upon the [prosecutor's] recommendation of or agreement not to oppose a particular sentence ..., or upon a guarantee of a particular sentence”). "Sentence bargaining carries with it a somewhat greater risk than charge bargaining. When a defendant bargains for a plea to a lesser offense, he receives his bargain the instant he enters his guilty plea, but when he pleads guilty in exchange for the prosecutor's promise to seek a certain sentence there remains some possibility that ... the trial judge will not follow the prosecutor’s recommendations.” LaFave, supra, at § 21.1(a). This case involves only charge bargaining.
Federal Rule of Criminal Procedure 11(c)(1) also reflects the distinction between a charge bargain and a sentence bargain, and prescribes procedures for each:
[T]he plea agreement may specify that an attorney for the government will:
(A) not bring, or will move to dismiss, other charges;
(B) recommend, or agree not to oppose the defendant’s request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court); or
(C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).
Fed. R. Crim. P. ll(c)(l)(A)-(C).
Thus, there were no agreements about Cue-ro’s sentence, as indicated by Appendix A to the dissent; rather, because the state agreed to drop the misdemeanor charge, Cuero’s sentence was limited to 14 years and 4 months.

. The dissent misleadingly mistakes the "no deals with the people” language to mean that there was no plea agreement, and, ironically, holds up the document setting forth the plea agreement, Appendix A, to support its view.

. Absurdly, the dissent attaches the very document that the court and both state and defense counsel identified as the written plea agreement as purported proof that there was no agreement. The dissent’s analysis reads like the caption "This is not a pipe” below Magritte's famous painting of a pipe. Even more mystifying, the dissent disregards the entire plea colloquy, transcript of proceedings, and the written plea agreement itself to reach this convenient conclusion. The dissent stands alone in its erroneous conclusion — not even the state disputed the existence of the plea agreement, until oral argument, and it waived that argument by failing to raise it in the answering brief. Clem v. Lomeli, 566 F.3d 1177, 1182 (9th Cir. 2009) (holding that an argument not addressed in an answering brief is waived (citing United States v. Gamboa-Cardenas, 508 F.3d 491, 502 (9th Cir. 2007))). Throughout its briefing, the state insists that California law allowed it to amend the complaint, even after the plea agreement was entered and Cuero was convicted. By contrast, Cuero argued throughout his opening brief that the state breached his original plea agreement — and the state did not dispute the original plea agreement's existence anywhere in its answering brief. To the contrary, the state acknowledged the agreement's existence and framed the issue to be resolved as "[w]hether amendment of the complaint after Cuero pleaded guilty violated the plea agreement and Cuero’s right to due process.” Indeed, the state’s brief contrasted Cuero’s “initial plea agreement” with his "second” or “new plea agreement.” It was therefore no wonder that members of our panel greeted the state’s argument that there was no plea agreement, made for the first time at oral argument, with incredulity.

. The dissent argues that Buckley’s reasoning was undermined to the point of irreconcilability by the Supreme Court’s intervening opinions in Wilson v. Corcoran, 562 U.S. 1, 131 S.Ct. 13, 178 L.Ed.2d 276 (2010) (per curiam), and Swarthout v. Cooke, 562 U.S. 216, 131 S.Ct. 859, 178 L.Ed.2d 732 (2011) (per curiam), freeing our three-judge panel to entirely disregard the en banc Buckley decision. The dissent is incorrect. Wilson and Swarthout each reversed an intermediate appellate decision based on perceived errors of state, rather than federal, law in the areas of statutory aggravation and parole, respectively. They do not speak to the situation where, as here, the Supreme Court has clearly held that the federal constitutional due process right is itself defined by reference to principles of state law. Buckley, 441 F.3d at 695 (citing Adamson, 483 U.S. at 6 n. 3, 107 S.Ct. 2680).

. The state argues that its conduct was appropriate because California Penal Code § 1192.5 allows a state court to, among other things, "withdraw its approval [of a plea] in the light of further consideration of the matter.” But that is not what happened here. Rather, the prosecution sought to renege on its court-approved promise to Cuero. The result: Cuero received a sentence far greater than that specified in the court-approved plea agreement. Section 1192.5 actually prohibits what took place here. That section disallows the imposition of "a punishment more severe than that specified in the plea."

. The state argues that our construction of the plea agreement is foreclosed by California Penal Code § 969.5, which permits amendment of a complaint after a defendant pleads guilty if the complaint "does not charge all prior felonies of which the defendant has been convicted.” But § 969.5 is irrelevant to the interpretation of a court-approved plea agreement under state contract principles. Under California law, “a prosecutor may withdraw from a plea bargain at any time before the defendant pleads guilty or otherwise detrimentally relies on that bargain.” Witkin, supra at § 382 (emphasis added); see also People v. Rhoden, 75 Cal.App.4th 1346, 77 Cal.App.4th 512A, 89 Cal.Rptr.2d 819, 824-25 (1999), as modified on denial of reh’g (Nov. 23, 1999). Once a defendant enters a guilty plea pursuant to a plea agreement, the state is bound by the agreement and any attempt by the state to withdraw — through a motion to amend the complaint pursuant to § 969.5 or otherwise — constitutes a breach. Simply put, that § 969.5 provides a discretionary vehicle for post-plea amendment of a complaint does not mean that the prosecutor can amend the complaint after the court has approved a plea agreement and signed an order of conviction. In any event, the state did charge "all prior felonies of which [Cuero] ha[d] been convicted” in the original complaint — it simply did not charge Cuero’s felony assault conviction as a strike.

. In granting the state's motion to amend, the Superior Court reasoned that Cuero’s "substantial rights [would not be] prejudiced by the mere fact that [his] potential punishment may have been increased due to the amendment,” and that Cuero would "be in the same situation as he would have been prior to entry of the plea.” The court borrowed this (inapposite) language almost verbatim from Jackson and Alvarado. See Jackson, 48 Cal.Rptr.2d at 844 (relying on Alvarado).

. In this context, specific performance is necessary to maintain the integrity and fairness of the criminal justice system. See, e.g., LaFave, supra, at § 21.2(e) ("When the breach was a failure by the prosecutor to carry out a promise which was fulfillable, then certainly the defendant’s request for specific performance should be honored. ... [Tjhere is no reason why a prosecutor who has failed to keep his fulfillable plea bargain promise should be allowed to force the defendant into a withdrawal of the plea and thus, presumably, a permanent breach of the bargain.”) (footnotes omitted); State v. Tourtellotte, 88 Wash.2d 579, 564 P.2d 799, 802 (1977) (en banc) ("If a defendant cannot rely upon an agreement made and accepted in open court, the fairness of the entire criminal justice system would be thrown into question. *891 No attorney in the state could in good conscience advise his client to plead guilty and strike a bargain if that attorney cannot be assured that the prosecution must keep the bargain[.]”). Although not dispositive, when Santobello was decided, “a majority of the court’s members ... [were] on record as favoring looking to defendant’s wishes [as to choice of remedy].” Dennis A. Fischer, Beyond Santobello — Remedies for Reneged Plea Bargains, 2 U. San Fernando Valley L. Rev. 121, 125 (1973); see also Santobello, 404 U.S. at 267, 92 S.Ct. 495 (Douglas, J., concurring) ("[A] court ought to accord a defendant’s preference considerable, if not controlling, weight inasmuch as the fundamental rights flouted by a prosecutor’s breach of a plea bargain are those of the defendant, not of the State.”); id. at 268, 92 S.Ct. 495 (Marshall, J„ dissenting) (explaining that Justice Douglas's concurrence, coupled with the dissenting votes, appeared to create a majority in favor of honoring the defendant’s preferred remedy).