**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL DANIEL CUERO,
*Petitioner-Appellant*,

v.

MATTHEW CATE,
*Respondent-Appellee.*

No. 12-55911

D.C. No.
3:08-cv-02008-BTM-WMC

ORDER

Appeal from the United States District Court
for the Southern District of California
Barry T. Moskowitz, District Judge, Presiding

Argued and Submitted August 5, 2015
Pasadena, California

Filed March 8, 2017

Before: Diarmuid F. O'Scannlain, Barry G. Silverman,
and Kim McLane Wardlaw, Circuit Judges.

Order;
Concurrence by Judge Wardlaw;
Dissent by Judge Callahan

**SUMMARY**[*]

**Habeas Corpus**

The panel denied a petition for panel rehearing and, on behalf of the court, a petition for rehearing en banc, in a case in which the panel reversed the district court's judgment denying California state prisoner Michael Daniel Cuero's 28 U.S.C. § 2254 habeas corpus petition and remanded with instructions to issue a conditional writ requiring the state to resentence Cuero in accordance with the original plea agreement within 60 days of the issuance of the mandate.

Concurring in the denial of rehearing en banc, Judge Wardlaw, joined by Judge Silverman, wrote that there is no need for the dissent's "sky is falling" rhetoric, as this is the rare case where the state court's decision was contrary to then-clearly established Supreme Court law governing guilty pleas induced by agreements with the prosecutor.

Judge Callahan, joined by Judges O'Scannlain, Tallman, Bybee, Bea, M. Smith, and Ikuta, dissented from the denial of rehearing en banc. She wrote that the three-judge panel decision is not based on clearly established federal law, as the Supreme Court has never held that the Due Process Clause precludes post-plea, pre-judgment amendments to a complaint; that the Supreme Court has never ordered the reinstatement of an alleged plea agreement that was not in effect at the time judgment was entered; and that such an

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

exercise of raw federal judiciary power is exactly what the Antiterrorism and Effective Death Penalty Act prohibits.

## COUNSEL

Devin Burstein (argued), Warren & Burstein, San Diego, California, for Petitioner-Appellant.

Anthony Da Silva (argued) and Matthew Mulford, Deputy Attorneys General; Julie L. Garland, Senior Assistant Attorney General; Gerald A. Engler, Chief Assistant Attorney General; Kamala Harris, Attorney General of California; Office of the Attorney General, San Diego, California; for Respondent-Appellee.

**ORDER**

Judges Silverman[1] and Wardlaw have voted to deny the petition for panel rehearing and rehearing en banc. Judge O'Scannlain has voted to grant the petition for panel rehearing and rehearing en banc.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of the votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 35.

The petition for panel rehearing and rehearing en banc is **DENIED**.

**IT IS SO ORDERED.**

---

WARDLAW, Circuit Judge, with whom SILVERMAN, Circuit Judge, joins, concurring in the denial of rehearing *en banc*:

The panel majority opinion speaks for itself. I respectfully suggest that there is no need for the dissent's "the sky is falling" rhetoric. This is the rare case where the state court's decision was contrary to then-clearly established Supreme Court law governing guilty pleas induced by agreements with the prosecutor. It is no wonder that a

---

[1] Judge O'Scannlain and Judge Silverman both voted on the petition for rehearing en banc while they were in active status.

majority of our active judges declined to rehear this simple appeal en banc.

## I.

On October 18, 2005, the San Diego County District Attorney's Office filed a criminal complaint against Cuero. The complaint, as amended, charged Cuero with two felonies, causing great bodily injury to another while driving under the influence and being a felon in possession of a firearm, as well as with a misdemeanor charge of being under the influence of a controlled substance. The state alleged, based on its review of Cuero's criminal history, that Cuero had a single strike for first-degree burglary and three additional prior convictions resulting in prison terms that did not constitute strikes.

Cuero and the prosecution reached a plea agreement, which they reduced to writing. Cuero would plead guilty to the two substantive felony counts listed in the first amended complaint and admit his four prior convictions. In exchange, the state would drop the misdemeanor charge from the complaint. This agreement represented a charge bargain only, not a sentence bargain.[1]   As indicated on the plea

---

[1] Charge bargains "consist[] of an arrangement whereby the defendant and prosecutor agree that the defendant should be permitted to plead guilty to a charge less serious than is supported by the evidence." 5 Wayne R. LaFave et al., *Criminal Procedure* § 21.1(a) (4th ed. 2016). Sentence bargains "involve[] an agreement whereby the defendant pleads . . . to the original charge[] in exchange for some kind of promise from the prosecutor concerning the sentence to be imposed." *Id.* In short, in a charge bargain the deal relates to the charges the prosecution will bring and to which the defendant will plead, while in a sentence bargain the parties reach an agreement over the prosecution's sentencing

agreement, the parties did not agree to a particular sentence, leaving sentencing to the court within the maximum statutory sentence of 14 years, 4 months of incarceration.

On December 8, 2005, Cuero pleaded guilty pursuant to the terms of the plea deal. During the change-of-plea proceeding, the court reviewed the plea agreement, signed by both defense counsel and the state prosecutor, and noted that the parties had left the "sentence for the Court" and that Cuero had made no sentencing deals "with the People." The court confirmed that Cuero had heard "the plea agreement that [the court] described," that it was his "full and complete understanding of the agreement to settle this case" and that he "wish[ed] to accept the agreement to this case." The judge also explained that "[i]n addition to the plea agreement," the document set forth the constitutional rights Cuero relinquished by pleading guilty.

Cuero fully performed his obligations under the plea bargain, pleading guilty and waiving his constitutional and other rights. The government then moved to dismiss the misdemeanor count "in light of the plea," carrying out its own obligation under the agreement. Once Cuero pleaded guilty to the relevant charges and the prosecution moved to drop the misdemeanor charge, the trial judge signed the court's "Finding and Order" accepting Cuero's plea and admissions and concluding that Cuero was "convicted thereby." The court scheduled sentencing for January 11, 2006.

While preparing for sentencing, the prosecution apparently concluded that another of Cuero's prior

---

recommendation. This distinction is also reflected in Federal Rule of Criminal Procedure 11.

convictions constituted a strike. Though the prosecutor was previously aware of this conviction (as evidenced by the fact she charged it in the complaint to which Cuero had pleaded guilty pursuant to the plea deal), she did not initially notice that the prior conviction could be counted as a strike. Notwithstanding the written agreement "to settle this case" and Cuero's preexisting guilty plea and conviction, the prosecution moved to amend the complaint to add a second strike and two additional felony priors, drastically increasing Cuero's sentencing exposure from a maximum of 14 years, 4 months to a minimum of 25 years and a maximum of 64 years to life. A different Superior Court judge than the one who accepted the plea agreement and signed the conviction papers permitted, over defense counsel's objection, the prosecutor to "amend" the charging document. Cuero, deprived of the benefit of his original bargain and having no other choice, entered into a new plea agreement exposing him to a maximum sentence of 25 years to life. On April 20, 2006, the new trial judge sentenced Cuero to 25 years to life.

## II.

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a habeas petition may not be granted unless the state court's adjudication of the claim under review "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "[C]learly established Federal law under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003)

(internal quotation marks omitted). At the time of the state court's decision, Supreme Court precedent clearly established that it was a violation of Michael Cuero's due process rights for the prosecution to seek to amend its complaint after Cuero entered a guilty plea induced by a plea agreement with the State. The trial judge's decision to allow the prosecution to amend the complaint after Cuero pleaded guilty and was convicted pursuant to the agreement thus violated clearly established Supreme Court law, satisfying AEDPA's requirements.

First, *Santobello v. New York* holds that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. 257, 262 (1971); *see also Bordenkircher v. Hayes*, 434 U.S. 357, 362 (1978) ("[A] prosecutor's plea-bargaining promise must be kept."). *Santobello* stands for the proposition that "a criminal defendant has a due process right to enforce the terms of his plea agreement." *Buckley v. Terhune*, 441 F.3d 688, 694 (9th Cir. 2006) (en banc).**[2]**

Second, the Court in *Mabry v. Johnson* instructed us that a guilty plea entered pursuant to a plea agreement "implicates the Constitution." 467 U.S. 504, 507–08 (1984) ("A plea bargain standing alone is without constitutional significance . . . . It is the ensuing guilty plea that implicates the Constitution. Only after respondent pleaded guilty was he

---

**[2]** This language from *Buckley* and other citations to circuit precedent in the panel majority opinion guided our analysis only "for the limited purpose of assessing what constitutes 'clearly established' Supreme Court law and whether the state court applied that law unreasonably." *Woods v. Sinclair*, 764 F.3d 1109, 1121 (9th Cir. 2014).

convicted, and it is that conviction which gave rise to the deprivation of respondent's liberty at issue here."); *see also Kercheval v. United States*, 274 U.S. 220, 223 (1927) ("A plea of guilty . . . is itself a conviction. Like a verdict of a jury it is conclusive. . . . [T]he court has nothing to do but give judgment and sentence."). My dissenting colleagues incorrectly claim that *Mabry* did not determine the point at which a defendant's due process right to enforce his plea agreement attaches. Yet the central issue in *Mabry* was whether due process concerns are implicated when a defendant accepts the prosecution's offer of a plea deal or only when the defendant pleads guilty in detrimental reliance on the plea agreement. *See Mabry*, 467 U.S. at 507–10. The core holding of *Mabry* is thus that a plea of guilty induced by a plea agreement triggers due process protection.

Together, these Supreme Court cases clearly establish that a defendant whose guilty plea was induced by a prosecutorial promise is constitutionally entitled to fulfillment of that promise and that a subsequent prosecutorial breach of the plea agreement violates the defendant's due process rights. Once Cuero fully performed his promise to plead guilty and the government moved to dismiss his misdemeanor charge, Cuero stood "convicted" pursuant to a "Finding and Order" signed by the judge. According to *Mabry*, at that point Cuero's plea agreement transformed from an "executory agreement" that did not "implicate[] the Constitution" to one that bore "constitutional significance" because Cuero's guilty plea and conviction were induced by the prosecutor's agreement to the reduced charges. 467 U.S. at 507–08. Cuero's plea rested on a promise of the prosecutor, requiring that promise to be "fulfilled." *Santobello*, 404 U.S. at 262. The plea bargain became a constitutionally enforceable

agreement, and Cuero was entitled to have the prosecution carry out its end of the deal.

There is absolutely no support for the dissent's supposition that whether the Due Process Clause is implicated turns on whether the defendant has been sentenced and final judgment rendered. In fact, the Supreme Court has held distinctly contrary to the dissent's view. In *Santobello*, the Supreme Court addressed the Due Process Clause's application to circumstances strikingly similar to Cuero's. At the point when the prosecution breached Santobello's plea agreement, a judgment setting forth the sentence had not been entered. The prosecution had promised in the pre-judgment plea agreement that it would not make a sentencing recommendation, and Santobello pleaded guilty in accordance with that agreement. 404 U.S. at 258–59. At sentencing, the government broke its promise by urging the court to adopt the maximum available sentence, one year. *Id.* at 259. The Supreme Court held that Santobello had a due process right to enforce the terms of his plea agreement, finding that the prosecutor breached the agreement and that "the adjudicative element inherent in *accepting a plea of guilty*" must contain safeguards to protect the rights of defendants, including the right to have a prosecutorial promise fulfilled when such promise was used to induce a guilty plea. *Id.* at 262 (emphasis added).

Defendants routinely promise pursuant to plea agreements both to plead guilty and to cooperate by testifying at a codefendant's trial. The defendant enters his plea, the plea is accepted by the court, but he is not sentenced until after he fully cooperates, and therefore a final judgment is not immediately entered. According to the dissent's analysis, because the defendant has not been convicted and final

judgment has not been entered, an amendment of the charging document at that point would be constitutionally permissible. Yet it would be a clear violation of a defendant's due process rights to allow the prosecution to breach the agreement by seeking to amend the complaint or indictment at that stage, once the defendant had already fully performed his end of the bargain by testifying against his codefendant. It therefore cannot be the case that due process rights do not attach until the defendant has already been sentenced and "final judgment" entered. The dissent's discussion of the distinction between a guilty plea and the entry of judgment (which carefully omits the fact of conviction following entry of a plea) is thus a distinction without a difference to our analysis.

Similarly, the dissent's argument that the original plea agreement "was not in effect at the time judgment was entered" and therefore lacks constitutional significance begs the question. The original plea deal was "in effect" when Cuero first pleaded guilty and was convicted pursuant to his plea. To the extent the agreement ceased to be "in effect," this was solely because in the interim the government was allowed to breach the agreement, leaving Cuero no choice but to plead a second time to a different complaint and be convicted once more. The dissent's argument reduces to the proposition that because the government breached the first plea agreement, Cuero's guilty plea and resulting conviction induced by that plea agreement did not implicate due process, creating a catch-22 for Cuero and like defendants. According to my dissenting colleagues, the due process right to enforce a plea agreement would apply only where the prosecutor had not previously breached it.

## III.

The dissent similarly holds an alternative view of state law untethered to reality. California state law treats guilty pleas entered without the inducement of a plea agreement with the State differently from those that are entered pursuant to a plea deal. Under California law, the rights of both parties to back out of the plea agreement terminated once Cuero entered his plea pursuant to the parties' agreement and was convicted. Cuero did not simply enter a plea that he could withdraw. The trial court "made the requisite factual findings and accepted the plea," *Brown v. Poole*, 337 F.3d 1155, 1159 (9th Cir. 2003), and concluded that Cuero was "convicted thereby." Once the plea was accepted and Cuero was convicted, he could no longer withdraw his guilty plea absent good cause and an exercise of discretion by the court. Cal. Penal Code § 1018. Similarly, California Penal Code § 969.5, while allowing the prosecution to amend a complaint after the entry of guilty pleas without plea agreements, does not allow the prosecution to amend its complaint following a guilty plea that was induced by prosecutorial promises embedded in a plea agreement. Instead, under California law, "a prosecutor may withdraw from a plea bargain at any time *before* the defendant pleads guilty or otherwise detrimentally relies on that bargain." 3 B.E. Witkin et al., California Criminal Law § 382 (4th ed. 2012) (emphasis added); *see also People v. Superior Court (Alvarado)*, 255 Cal. Rptr. 46, 50–51 (Ct. App. 1989). California law does not permit amendment to the complaint when the guilty plea is entered in reliance on a plea agreement precisely because such an interpretation would run afoul of the due process protections that attach under those circumstances. The dissent is therefore wrong as a matter of state as well as constitutional law.

**IV.**

The dissent further misstates California law providing the requisite remedy for the prosecution's breach. As the dissent acknowledges, the Supreme Court has clearly established that "the construction of [a] plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law." *Ricketts v. Adamson*, 483 U.S. 1, 5 n.3 (1987). Moreover, both Supreme Court and California precedent provide that plea agreements are to be interpreted in accordance with state contract law. *See Puckett v. United States*, 556 U.S. 129, 137 (2009) ("[P]lea bargains are essentially contracts."); *People v. Segura*, 188 P.3d 649, 656 (Cal. 2008) ("A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound." (quoting *People v. Ames*, 261 Cal. Rptr. 911, 913 (Ct. App. 1989))). "A negotiated plea agreement is a form of contract, and it is interpreted according to general contract principles." *People v. Shelton*, 125 P.3d 290, 294 (Cal. 2006).

By seeking to amend the complaint after Cuero waived all his rights, pleaded guilty and was convicted, the prosecution breached the fundamental promise it made to Cuero: The State agreed to drop a charge and thereby limit Cuero's maximum exposure to 14 years, 4 months incarceration. The foundation of a charge bargain is that the parties reach an agreement as to what the prosecution will and will not charge and to what the defendant will plead. *See* LaFave, *supra*, at § 21.1(a). By definition, a charge bargain means that the prosecution will not later add charges or strikes, just as the defendant will not plead to less than the agreed-upon charges and strikes. The government's attempt to amend the

complaint unequivocally breached its central promise to Cuero.[3]

"Where a plea agreement is breached, the purpose of the remedy is, to the extent possible, to repair the harm caused by the breach." *Buckley*, 441 F.3d at 699 (internal quotation marks omitted) (quoting *People v. Toscano*, 20 Cal. Rptr. 3d 923, 927 (Ct. App. 2004) (citing *People v. Kaanehe*, 559 P.2d 1028, 1036–37 (Cal. 1977))). California law calls for specific performance "when it will implement the reasonable expectations of the parties without binding the trial judge to a disposition that he or she considers unsuitable under all the circumstances." *People v. Mancheno*, 654 P.2d 211, 215 (Cal. 1982). "When the breach [alleged] is a refusal by the

---

[3] The dissent also argues that the state prosecutor made a mistake in the original plea agreement, which could entitle the prosecution to rescission. First, the state has never raised the issue of rescission based on mistake in the many years of briefing in this case, so the argument is waived. Second, there is no evidence that the state prosecutor's original promises under the first plea agreement arose from a "mistake." It is equally likely that the prosecution forewent additional legal research and investigation in order to secure a quick, favorable resolution of this case. Third, the government's putative "mistake" regarding whether Cuero's prior conviction constituted a strike under California law would have been a mistake of law, not a mistake of fact, and California law does not permit rescission of a contract based on a party's unilateral mistaken interpretation or application of the law. *See* Cal. Civ. Code §§ 1578, 1689(b)(1). Finally, even if the standard permitting rescission for certain unilateral mistakes of fact applied here, rescission is not available to a party whose mistake of fact was the result of its own negligence, *see* Cal. Civ. Code § 1577, as was the government's late "discovery" of Cuero's strike here: The government had access to all the information necessary to conclude that Cuero's second prior conviction constituted a strike, and its failure to do so before entering the plea agreement was exclusively the result of its own negligence at best or a calculated, though incorrect, decision at worst.

prosecutor to comply with the agreement, specific enforcement would consist of an order directing the prosecutor to fulfill the bargain and will be granted where there is a substantial possibility that specific performance will completely repair the harm caused by the prosecutor's breach." *People v. Timothy N.* (*In re Timothy N.*), 157 Cal. Rptr. 3d 78, 88 (Ct. App. 2013) (alteration in original) (internal quotation marks omitted) (quoting *Kaanehe*, 559 P.2d at 1036).

Here, the sole remedy available to implement Cuero's reasonable expectations was specific performance. "Permitting" Cuero to withdraw his guilty plea and plead guilty to the constitutionally defective amended complaint, the alternative remedy proposed, did not repair the harm caused by the breach; instead, it allowed the *prosecution* to achieve the precise outcome it sought in breaching the plea agreement. Protection of Cuero's due process rights therefore "leaves specific performance as the only viable remedy." *Brown*, 337 F.3d at 1161.

**V.**

Finally, the panel majority opinion has none of the broader implications my dissenting colleagues would ascribe to it. The opinion does not alter the existing dynamic between the prosecutor and the defendant. Prosecutors are already constitutionally required to uphold their end of plea agreements following the entry of a guilty plea and conviction, *see Santobello*, 404 U.S. at 262—a proposition that no one can fairly find surprising. Neither party to a binding plea agreement is permitted to renege on that agreement because he may have entered it on the wrong assumptions. If the prosecution is troubled by its inability to

breach a binding plea agreement if further information about a defendant's criminal history comes to light, contractual provisions can and do minimize that risk. Here, for example, the original plea agreement could have provided that if the state later learned that one of the charged priors qualified as a strike, the court could treat it as such for sentencing purposes. And contrary to my dissenting colleagues' contention, the panel majority opinion does not apply where the defendant misrepresents his identity or prior convictions and thereby fraudulently induces the government to enter a plea agreement that does not reflect his full criminal history. In this case, the government had access to accurate and adequate information about Cuero's prior convictions at the time of the original plea agreement and merely neglected to reflect his full criminal history in the original amended complaint.

It is only by abstracting to the highest level—noting that "plea agreements play an instrumental part in our criminal justice system"—that my dissenting colleagues can claim that this case impedes the administration of criminal justice in California. No one disputes that plea agreements are an "essential component of the administration of justice." *Santobello*, 404 U.S. at 260. Yet the majority opinion in no way interferes with the ability of the state to conduct plea negotiations and enter plea agreements. Indeed, it is the dissent's interpretation of the Due Process Clause and California Penal Code § 969.5—as enabling the prosecution to back out of charge bargains already accepted by the court and fully performed by the defendant—that would undermine the stability of the plea bargaining system by rendering such bargains illusory and untrustworthy. If a prosecutor could unilaterally renege on a plea bargain that had been accepted by the court and fully performed by a defendant, defendants

would likely lose faith in the plea bargaining system and would rationally require more substantial promises from the prosecution to secure their participation.

---

CALLAHAN, Circuit Judge, with whom O'SCANNLAIN, TALLMAN, BYBEE, BEA, M. SMITH, and IKUTA, Circuit Judges, join, dissenting from the denial of rehearing *en banc*:

For the second time in roughly as many weeks, we invite summary reversal by the Supreme Court in a state court habeas case.[1]  The three-judge panel decision here is not based on clearly established federal law, as the Supreme Court has never held that the Due Process Clause precludes post-plea, pre-judgment amendments to a complaint.  Nor has the Supreme Court ever ordered the reinstatement of an alleged plea agreement that was not in effect at the time judgment was entered.  Such an exercise of raw federal judiciary power, though, is exactly what the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, prohibits.  I respectfully dissent from our refusal to rehear this case *en banc.*

## I. BACKGROUND

On October 14, 2005, Michael Cuero ("Cuero") crashed his vehicle into Jeffrey Feldman, who was standing on the side of the road next to his parked pickup truck.  At the time, Cuero did not have a valid driver's license, was under the

---

[1] The other case we refused to rehear *en banc* was *Hardy v. Chappell*, 832 F.3d 1128 (9th Cir. 2016), *reh'g en banc denied*, — F.3d — (9th Cir. 2017).

influence of methamphetamine, and was on active parole for prior drug violations. Although the record is silent as to the injuries Cuero sustained from the crash, he maintained the wherewithal and physical ability to dispose of the 9mm semiautomatic pistol that he, as a felon, was unlawfully possessing. Feldman, on the other hand, was not so fortunate. He had to be airlifted to the nearest trauma center, where he immediately underwent emergency surgery and was put on life support. Among other things, Feldman suffered a severe brain injury, fractures to all the bones in his face, and a ruptured spleen. Feldman's prognosis was grim and his treating physicians believed he would never be able to work again.

A few days after the crash, the People filed its initial criminal complaint against Cuero. On October 28, 2005, the People filed an amended criminal complaint, alleging that Cuero: (1) inflicted serious bodily injury to Feldman while driving under the influence of alcohol or drugs and that he did so within ten years of a driving under the influence conviction, a felony; (2) possessed a firearm as a felon, a felony; and (3) was under the influence of a controlled substance, a misdemeanor. The People also alleged that Cuero had served four prior prison terms[2] and that one of his prior convictions—for residential burglary—constituted a strike.

On December 8, 2005, Cuero pleaded guilty to inflicting serious bodily injury while driving under the influence and to unlawful possession of a firearm. Additionally, Cuero admitted that he had served four prior prison terms and that

---

[2] For each prior prison term, an additional one-year, consecutive prison term is added. *See* Cal. Penal Code § 667.5(b).

his residential burglary conviction was a strike. Following Cuero's plea, the Superior Court granted the People's motion to dismiss the remaining misdemeanor count. In light of his pleas and admissions, Cuero's maximum punitive exposure was 14 years, 4 months. It is not clear whether Cuero's plea was based on an agreement with the People; there is evidence that it was not.[3] There is no evidence, though, that the People agreed to recommend a particular sentence or to waive its ability to later amend the complaint to add a charge or strike.

In preparing the sentencing memorandum and upon further investigation, the prosecuting attorney discovered that Cuero had two additional serious felony convictions and an assault-with-a-deadly-weapon conviction that constituted yet another strike.[4] On January 11, 2006, pursuant to California Penal Code section 969.5,[5] the People filed a motion to

---

[3] For instance, in response to the plea form's question of whether he had "been induced to enter [his] plea by any promise or representation of any kind," Cuero wrote: "STC–NO DEALS W/ THE PEOPLE." *See Cuero v. Cate*, 827 F.3d 879, 915 (9th Cir. 2016) (O'Scannlain, J., dissenting). Based on the judge's statements at the plea hearing, "STC" appears to stand for "sentence for the court." *Id.* at 901 n.7 (O'Scannlain, J., dissenting).

[4] Under California law, whether an assault-with-a-deadly-weapon conviction constitutes a strike is based on the conviction's underlying facts. *See, e.g.*, *People v. Winters*, 93 Cal. App. 4th 273, 280 (2001) (noting that not all assault-with-a-deadly-weapon convictions constitute a strike).

[5] California Penal Code section 969.5(a) provides:

> Whenever it shall be discovered that a pending complaint to which a plea of guilty has been made under Section 859a does not charge all prior felonies of which the defendant has been convicted either in this

amend the criminal complaint to add the two serious felony convictions and allege that Cuero's assault-with-a-deadly weapon conviction was an additional strike.[6]   Cuero challenged the amendment, arguing that the Superior Court, exercising the discretion afforded to it by California Penal Code section 969.5, should deny the request because it was untimely and would prejudice him.  However, Cuero did not contend that the requested amendment violated the Due Process Clause or California contract law.

Following a hearing on February 2, the Superior Court granted the People's request.  The Superior Court based its decision on section 969.5's language and its belief that existing case law demonstrated that an increase in exposure due to an amendment does not impact a defendant's substantial rights.  After announcing its decision, the Superior Court asked Cuero if he wished to withdraw his plea.  Cuero responded by requesting time to make his determination, which the Superior Court afforded him.  Thereafter, the People filed a second amended complaint, which raised Cuero's possible exposure to a sentence of 64 years to life.

---

state or elsewhere, the complaint may be forthwith amended to charge the prior conviction or convictions and the amendments may and shall be made upon order of the court.   The defendant shall thereupon be arraigned before the court to which the complaint has been certified and shall be asked whether he or she has suffered the prior conviction. If the defendant enters a denial, his or her answer shall be entered in the minutes of the court.  The refusal of the defendant to answer is equivalent to a denial that he or she has suffered the prior conviction.

[6] Each prior "serious felony" conviction adds a five-year enhancement to a defendant's sentence.  Cal. Penal Code §  667(a)(1).

Sometime during the next month and a half, Cuero reached an agreement with the People.  In exchange for Cuero pleading guilty to inflicting great bodily injury to Feldman while driving under the influence of a drug and admitting the alleged two prior strikes, the People agreed to withdraw the second amended complaint and charge Cuero with only inflicting great bodily injury to Feldman while driving under the influence of a drug and having two prior strikes, which had the effect of dramatically reducing Cuero's exposure.

At the change-of-plea hearing held on March 27, 2006, the People filed a third amended complaint ("TAC") reflecting these changes.  Cuero withdrew his previous guilty plea and pleaded guilty to the TAC's single charge.  Cuero also admitted to the two prior strikes contained in the TAC and stipulated to a 25-years-to-life sentence.

The sentencing hearing was held on April 20, 2006.  At no point leading up to it did Cuero attempt to withdraw from his plea or ask the Superior Court to exercise its discretion and sentence him to less than 25 years to life, which he could have done.[7]  The Superior Court sentenced Cuero to what it had said it would—25 years to life.

---

[7] As noted in *People v. Superior Court (Romero)*, 13 Cal. 4th 497, 504, 529–30 (1996), pursuant to California Penal Code section 1385(a), a trial court may dismiss a strike if it is in furtherance of justice.

On direct appeal, Cuero's counsel filed a *Wende* brief[8] and asked the California Court of Appeal to review the record for error. Specifically, counsel directed the appellate court's attention to the "possible but not arguable issue[]" of "whether the [People's] amendment violated the terms of the earlier plea agreement in violation of due process." The appellate court afforded Cuero the opportunity to file a separate brief, but Cuero chose not to do so. After "review[ing] the entire record," on March 21, 2007, the Court of Appeal found that there was "no reasonably arguable appellate issue" and affirmed the Superior Court.

Thereafter, Cuero petitioned for habeas relief in the Superior Court, California Court of Appeal, and California Supreme Court, all of which denied Cuero's request for relief. Cuero then filed a federal habeas petition in the District Court, which was also denied and serves as the basis for this appeal.

## II. DISCUSSION

A federal habeas petition challenging state custody shall be denied "unless the [state court's] adjudication of the claim[] resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*." 28 U.S.C. § 2254(d)(1) (emphasis added). "A decision is 'contrary to' Supreme Court precedent where 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court

---

[8] A *Wende* brief, named after *People v. Wende*, 25 Cal. 3d 436 (1979), is similar to a brief filed in federal court pursuant to *Anders v. California*, 386 U.S. 738 (1967).

decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Jones v. Harrington*, 829 F.3d 1128, 1135 (9th Cir. 2016) (alterations in original omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)).    "A state court unreasonably applies clearly established federal law if it 'identifies the correct governing legal rule but unreasonably applies it to the facts of the particular state prisoner's case.'" *Id.* (alterations in original omitted) (quoting *White v. Woodall*, 134 S. Ct. 1697, 1705 (2014)).    State court decisions are to be measured "against [the Supreme Court's] precedents *as of 'the time the state court renders its decision*.'" *Greene v. Fisher*, 132 S. Ct. 38, 44 (2011) (emphasis in original) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71–72 (2003)).

The majority finds that the Superior Court's approval of the People's request to amend was both contrary to and an unreasonable application of clearly established law.**[9]** *Cuero v. Cate*, 827 F.3d 879, 883 (9th Cir. 2016).  In reaching this erroneous conclusion, the majority goes beyond the scope of what Supreme Court precedent instructs.    Rather than interpret "clearly established Federal law, as determined by the Supreme Court of the United States," the majority gives the Due Process Clause an overbroad and unprecedented interpretation that intrudes upon the just and orderly administration of justice in California and other states within the Ninth Circuit.

---

**[9]** In light of its finding that habeas relief was warranted based on the People's court-approved amendment, the majority did not address Cuero's ineffective assistance of counsel claim.  *See Cuero*, 827 F.3d at 883 n.4.

**A. The Superior Court's approval of the People's requested amendment was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.**

First, the Supreme Court has never held that the Due Process Clause prevents a state prosecutor from amending a criminal complaint post-plea, pre-judgment. Second, California Penal Code sections 969.5, 1009, and 1192.5 specifically allow for post-plea amendments of complaints, and no California court has limited any of the section's application to instances where a defendant pleaded without an agreement. Third, the Supreme Court has never held that specific performance is the only remedy for alleged violations of the Due Process Clause during the plea bargaining process or that federal appellate courts, as opposed to state courts, should fashion the remedy for any such violation. In fact, it has held the opposite.

**1. Supreme Court precedent does not clearly establish that the People's post-plea, pre-judgment amendment implicates the Due Process Clause.**

The majority claims that "a guilty plea seals the deal between the state and the defendant, and vests the defendant with a due process right to enforce the terms of his plea agreement." *Cuero*, 827 F.3d at 885 (internal quotation marks omitted). But—as the majority's citation of only three Ninth Circuit cases reveals—the Supreme Court has never applied the Due Process Clause to a plea agreement that was

not in effect at the time judgment was entered.[10]  Thus, even assuming that Cuero's initial guilty plea was pursuant to a plea agreement, there is no basis to conclude that the Superior Court acted contrary to or unreasonably applied clearly established Supreme Court precedent by exercising its statutorily-based authority and approving the People's request to amend the complaint.  *See, e.g.*, *Lopez v. Smith*, 135 S. Ct. 1, 4 (2014) (per curiam) (stating that precedent must address "the specific question presented by th[e] case").

In its conclusion, the majority states that, "[b]y allowing the prosecution to breach the agreement, reneging on the promise that induced Cuero's plea, the state court violated federal law clearly established by the Supreme Court in *Santobello* [*v. New York*, 404 U.S. 257 (1971)]."  *Cuero*, 827 F.3d at 891.  However, *Santobello* is clearly distinguishable.  There, the defendant agreed to plead guilty in exchange for the government's explicit promise not to make a sentence recommendation. 404 U.S. at 258.  Following the *Santobello* defendant's guilty plea, though, the government violated the parties' agreement by asking for the maximum possible sentence.  *Id.* at 259.  Significantly, unlike Cuero, the defendant in *Santobello* was never afforded the opportunity to back out of the parties' agreement and withdraw his plea.  *Id.* at 263.  Therefore, at the time judgment was entered, the defendant in *Santobello* remained bound by the agreement he had reached with the government, despite the government's

---

[10] While the language in some of our opinions may support the majority's conclusion, it is the Supreme Court's precedent, not ours, that matters here.  *See, e.g.*, *Glebe v. Frost*, 135 S. Ct. 429, 431 (2014) (per curiam) (noting that the Supreme Court has "repeatedly emphasized [that] circuit precedent does not constitute clearly established Federal law, as determined by the Supreme Court" (internal quotation marks omitted)).

breach. *Santobello* thus does not address the specific question in this case—does the Due Process Clause apply to an alleged plea agreement that is withdrawn before judgment is entered—and therefore cannot serve as a basis for habeas relief. *See Lopez*, 135 S. Ct. at 4.

*Mabry v. Johnson*, 467 U.S. 504 (1984), *overruled in part by Puckett v. United States*, 556 U.S. 129 (2009), also cannot serve as a basis for habeas relief. There, the Supreme Court stated:

> A plea bargain standing alone is without constitutional significance; in itself it is a mere executory agreement which, *until embodied in the judgment of a court*, does not deprive an accused of liberty or any other constitutionally protected interest. It is the ensuing guilty plea that implicates the Constitution. Only after respondent pleaded guilty was he convicted, and it is that conviction which gave rise to the deprivation of respondent's liberty at issue here.

467 U.S. at 507–08 (emphasis added) (footnote omitted). *Mabry* thus identifies two points at which due process rights may possibly attach in this context: (1) the entry of a plea, or (2) the entry of judgment. Notably, though, *Mabry* did not actually decide the issue because the government had withdrawn the plea agreement the defendant sought to enforce before the defendant entered a plea pursuant to it. *Id.* at 506.

In the thirty-plus years since *Mabry*, the Supreme Court has not addressed the Due Process Clause's application to a

pre-judgment plea agreement. As a result, the "precise contours" of a defendant's due process rights in the plea agreement context "remain unclear." *White*, 134 S. Ct. at 1705 (quoting *Lockyer*, 538 U.S. at 75–76). Therefore, at an absolute minimum, reasonable minds could disagree about whether the Due Process Clause covers pre-judgment plea agreements, particularly those that have been withdrawn or are not in effect at the time of judgment. *See, e.g.*, *Harrington v. Richter*, 562 U.S. 86, 101 (2011) ("A state court's determination that a claim lacks merit precludes habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004))).

Contrary to the majority's indication, there is a significant difference between the entry of a guilty plea and the entry of judgment. Far from a perfunctory step, the entry of judgment constitutes a significant milestone in a prosecution. Among other possible things, the entry of judgment dramatically reduces a defendant's ability to withdraw his guilty plea and exercise his constitutional right to trial. *See* Cal. Penal Code § 1018.[11] In short, the entry of judgment provides a finality that does not exist when a defendant simply offers to plead. Until judgment is entered, the defendant may withdraw his plea or the trial judge may withdraw approval. This distinction further confirms the reasonableness of the belief that the Due Process Clause attaches only after judgment is entered.

---

[11] The imposition of a sentence or entry of judgment has a similar effect in other states within the Ninth Circuit. *See, e.g.*, Alaska R. Crim. P. 11(e); Haw. R. Penal P. 32(d); Idaho Crim. R. 33(c); Nev. Rev. Stat. Ann. § 176.165; Or. Rev. Stat. Ann. § 135.365.

Under California law, "[i]n a criminal case, judgment is rendered when the trial court orally pronounces sentence." *People v. Karaman*, 4 Cal. 4th 335, 344 n.9 (1992); *accord People v. Mendoza*, 171 Cal. App. 4th 1142, 1150 (2009). Therefore, while a guilty plea is certainly a stop along the path to a judgment, it is not the final destination, as it does not include a sentence pronouncement. *See, e.g.*, Cal. Penal Code § 1191 (stating that, "in a felony case, after a plea, . . . the court shall appoint a time for pronouncing judgment"). Here, it is undisputed that, at the time the People sought and received permission to amend its complaint, no sentence had been announced, and, thus, no judgment had been entered. As a result, even if there was an initial plea agreement and the People's amendment violated it, a reasonable judge could find that the state courts here did not act contrary to, or unreasonably apply, clearly established federal law by allowing the amendment because no Supreme Court case has applied the Due Process Clause to a situation like the one presented here.

The fact that the Superior Court or California Court of Appeal might have extended the Due Process Clause to cover Cuero's alleged initial plea agreement does not mean that their failure to do so amounts to an unreasonable application of federal law. *See, e.g.*, *White*, 134 S. Ct. at 1706 (stating that AEDPA "does not require state courts to *extend* [the Supreme Court's] precedent or license federal courts to treat the failure to do so as error"). Simply put, Supreme Court precedent does not "squarely establish[]" that the Due Process Clause applies to pre-judgment plea agreements. *Id.* Therefore, it is not "so obvious that a clearly established rule applies to [this case] that there could be no fairminded disagreement on the question," as is needed for relief under AEDPA. *Id.* at 1706–07 (internal quotation marks omitted).

### 2. The People's post-plea, pre-judgment amendment to the criminal complaint did not violate the Due Process Clause.

Assuming, arguendo, that there was an initial plea agreement and that the Due Process Clause applied to it, there is no due process violation. "[T]he construction of [a] plea agreement and the concomitant obligations flowing therefrom are, within broad bounds of reasonableness, matters of state law." *Ricketts v. Adamson*, 483 U.S. 1, 5 n.3 (1987). To reiterate, California Penal Code section 969.5(a) states, in relevant part:

> Whenever it shall be discovered that a pending complaint to which a plea of guilty has been made under Section 859a does not charge all prior felonies of which the defendant has been convicted either in this state or elsewhere, the complaint may be forthwith amended to charge the prior conviction or convictions and the amendments may and shall be made upon order of the court.[12]

---

[12] In the last sentence of footnote 12, the majority states that, "[i]n any event, the state *did* charge 'all prior felonies of which [Cuero] ha[d] been convicted' in the original complaint—it simply did not charge Cuero's felony assault conviction as a *strike*." *Cuero*, 827 F.3d at 889 n.12 (alterations in original). Presumably, this statement was intended to imply that section 969.5 is not applicable in this case. There is a good reason the majority buried this statement in a footnote—it has no support. Nothing in existing case law suggests that section 969.5 does not apply to a strike, which is, after all, a felony. Further, the California Court of Appeal has affirmed amendments to add strikes under California Penal Code section 969a, which employs the same "does not charge all prior felonies of which

Additionally, California Penal Code section 1009 declares that the trial court "may order or permit an amendment of an indictment, accusation or information, or the filing of an amended complaint, for any defect or insufficiency, at any stage of the proceedings." Also, California Penal Code section 1192.5 provides that, following a defendant's guilty plea, a trial court retains the ability to "withdraw its approval [of the plea] in light of further consideration of the matter." Prior to pleading, a defendant is made aware of this ability. *See* Cal. Penal Code § 1192.5.

No California state court has held that sections 969.5, 1009, and 1192.5 are inapplicable in cases where a defendant pleads pursuant to a plea agreement reached with the People. *See People v. Lettice*, 221 Cal. App. 4th 139, 150 n.12 (2013) ("Neither the [*People v. Valladoli*, 13 Cal. 4th 590 (1996),] court, nor any other court of which we are aware, has considered whether the People may file an amended information after having entered into a plea agreement to resolve the case."). Therefore, based on the sections' plain language, a complaint may be amended post plea if the People seek and receive approval from the trial court to do so. *Cf. People v. Superior Court (Alvarado)*, 207 Cal. App. 3d 464, 478 (1989) (noting that trial courts have the discretion to amend a complaint to "allege a prior felony conviction after a guilty plea has been entered by the accused [under section 969.5]").

Here, California's amendment process was followed: the People filed a motion to amend, the Superior Court held a

_____

the defendant has been convicted" language. *See, e.g.*, *People v. Sandoval*, 140 Cal. App. 4th 111, 132–34 (2006). Thus, section 969.5 clearly applies here.

hearing on the motion, and, after determining that the requested amendment would not unfairly prejudice Cuero's substantial rights, the Superior Court granted the People's request and an amended complaint was filed. Furthermore, the Superior Court allowed Cuero to withdraw his initial plea, which was purportedly based on an earlier plea agreement. As a result, the People's amendment is consistent with state law and did not violate the Due Process Clause.

Recognizing that California criminal procedure law cannot get them to where they want to go, the majority shifts its focus to California contract law. *See Cuero*, 827 F.3d at 885–91. However, the majority's reliance on this body of law is misplaced for two reasons: first, the Supreme Court has never construed the phrase "matters of state law" to mean just "matters of state contract law"; and second, even if it had, in this case, the Superior Court's approval of the People's request to amend is not clearly inconsistent with that body of law.[13]

### i. The Supreme Court has never said that "matters of state law" means "matters of state contract law," thus, the Superior Court was not bound to apply woodenly California contract law.

The majority takes the Superior Court to task for not explicitly discussing the interplay between the California Penal Code and California contract law. *Id.* at 889–90. But why would it? Cuero did not raise any arguments under

---

[13] In addition, federal habeas corpus jurisdiction does not extend to alleged violations of state law. *See, e.g.*, *Guzman v. Morris*, 644 F.2d 1295, 1297 (9th Cir. 1981); 28 U.S.C. § 2254(a).

California contract law and neither the Supreme Court nor the California appellate courts have required its consideration. It is true that a number of cases have stated that California contract law generally applies to plea agreements. *See id.* at 888 (collecting cases). "Generally speaking," though, has no place in the AEDPA lexicon. *See, e.g.*, *Lopez*, 135 S. Ct. at 4 ("We have before cautioned the lower courts—and the Ninth Circuit in particular—against 'framing our precedents at such a high level of generality.'" (quoting *Neveda v. Jackson*, 133 S. Ct. 1990, 1994 (2013) (per curiam))). The precedent relied upon under AEDPA must address "the specific question presented by this case," *id.*, which here is: does state contract law eliminate a prosecutor's statutory ability to amend a criminal complaint after a defendant has allegedly pleaded pursuant to a plea agreement, but before judgment has been entered. No Supreme Court or California appellate court precedent answers this question.

Undeterred, the majority turns to our own precedent, specifically, *Davis v. Woodford*, 446 F.3d 957 (9th Cir. 2006), and *Buckley v. Terhune*, 441 F.3d 688 (9th Cir. 2006) (en banc). *See Cuero*, 827 F.3d at 888–89. But *Davis* and *Buckley* were decided after the Superior Court approved the People's amendment and are not Supreme Court opinions. As the Supreme Court has made clear, "[c]ircuit precedent cannot 'refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that [the Supreme] Court has not announced.'" *Lopez*, 135 S. Ct. at 4 (quoting *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (per curiam)). Thus, the Superior Court was not bound to apply woodenly state contract law, but rather, as *Ricketts* instructs, could consider any relevant state law. *Ricketts*, 483 U.S. at 5 n.3.

The Superior Court's approval of the People's request to amend is consistent with state law. First, the language in sections 969.5, 1009, and 1192.5 is broad and neither the California Supreme Court nor the California Court of Appeal has narrowed it. Second, existing California law evinces a strong desire that repeat felony offenders receive "longer prison sentences and greater punishment." Cal. Penal Code § 667(b). Third, California law strongly disfavors prosecutors dismissing or not charging all of a defendant's strikes, allowing for such action to occur only when it is "in the furtherance of justice" or when there is insufficient evidence to prove the strike. *See* Cal. Penal Code § 667(f)(1).[14]

In light of sections 969.5, 1009, and 1192.5, California contract law is not controlling. Again, no California case has ever held that state contract law limits the application of sections 969.5, 1009, and 1192.5. Furthermore, to the extent sections 969.5, 1009, and 1192.5 are inconsistent with state contract law in allowing the People to amend the complaint, those statutory provisions should govern because they speak more directly to the situation faced by the Superior Court. *See, e.g.*, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2071 (2012) ("It is a commonplace of statutory construction that the specific governs the general."

---

[14] Section 667(f) specifically refers to "serious and/or violent felony convictions." However, as subsequent case law makes clear, a "serious and/or violent felony conviction" under section 667(f) constitutes a strike. *See, e.g.*, *People v. Acosta*, 29 Cal. 4th 105, 111 (2002) ("Each of these crimes is either a 'serious felony' . . . or a 'violent felony' . . . and therefore is a strike under the Three Strikes law."). Because the terms are interchangeable, and for the sake of clarity, this dissental uses the word "strike," as opposed to the phrase "serious and/or violent felony conviction," when discussing section 667(f).

(alteration in original omitted) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992))); *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974) ("Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment.").

> ### ii. Even if state contract law had a role to play in the analysis, a reasonable judge could conclude that the People's amendment was permissible.

Although not stated, it is clear that the majority essentially viewed the People's amendment as a rescission of the alleged initial plea agreement. Under California law, a party to a contract may rescind a contract if the party's consent was given by mistake.[15]  *See* Cal. Civ. Code § 1689(b)(1). To claim rescission, the mistaken party must show that:

> (1) [he] made a mistake regarding a basic assumption upon which [he] made the contract; (2) the mistake has a material effect upon the agreed exchange of performances that is adverse to [him]; (3) [he] does not bear the risk of the mistake; and (4) the effect of

---

[15] The People's briefing did not address how its amendment is consistent with state contract law.  Nonetheless, we have an independent duty to ask "what arguments or theories . . . could have supported[] the state court's decision; and then [] ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of th[e] [Supreme] Court." *Harrington*, 562 U.S. at 102.

> the mistake is such that enforcement of the
> contract would be unconscionable.

*Donovan v. RRL Corp.*, 26 Cal. 4th 261, 282 (2001).  Here,
there is no doubt that the People would not have entered into
the alleged initial plea agreement with Cuero had it known
that a second prior conviction constituted a strike.  Further, if
the People's mistake remained uncorrected, Cuero would
have received a windfall—14 years rather than facing a
maximum of 64 years to life.  Therefore, factors one and two
are clearly satisfied.

A reasonable judge could also conclude factors three and
four were satisfied.  As recently noted by the California Court
of Appeal in *Amin v. Superior Court*, 237 Cal. App. 4th 1392,
1405 (2015), "there is a dearth of cases in California"
regarding whether a plea agreement is rescindable due to a
prosecutor's unilateral mistake.  While the majority in *Amin*
concluded that the People failed to establish that factors three
and four were satisfied, *see* 237 Cal. App. 4th at 1400–07, the
dissent disagreed, *id.* at 1411–15.  For purposes of Cuero's
appeal, *Amin* is significant for two reasons.  First, it shows
that, even as of 2015, California courts had not conclusively
decided how mistake-of-fact rescission applied in the plea
agreement context.  Second, the disagreement between the
majority and dissent demonstrates that reasonable judges
could disagree about the issue, even years after the conclusion
of Cuero's state court proceedings.  Thus, the state courts
here could have reasonably found that the alleged initial plea
agreement could be rescinded.

Despite the majority's intimation to the contrary, the
alleged rescission in this case did not occur past the point of
no return.  The People could still be disgorged of the benefit

received—Cuero's waiver of his right to trial—and the proverbial "coin" Cuero had paid could be refunded to him in full. Stated differently, the initial plea could be unwound and the parties returned to the exact same position they occupied prior to the plea being entered, as the prosecutor had argued at the hearing on the motion to amend. Thus, this case is unlike those where a defendant, pursuant to a plea agreement, testifies against another at trial or cooperates with law enforcement in some meaningful way. As a result, a reasonable judge could conclude that the alleged rescission here was permissible. *See, e.g.*, *NMSBPCSLDHB v. County of Fresno*, 152 Cal. App. 4th 954, 959–60 (2007) (stating that rescission "requir[es] each [party] to return whatever consideration has been received" (quoting *Imperial Cas. & Indem. Co. v. Sogomonian*, 198 Cal. App. 3d 169, 184 (1988))).

### 3. Even if Cuero's due process rights were violated, Supreme Court precedent does not require specific performance.

The majority concludes that the "Superior Court also unreasonably applied clearly established federal law by failing to order specific performance of Cuero's [initial] plea agreement." *Cuero*, 827 F.3d at 890. Again, this conclusion finds no support in existing Supreme Court precedent. In fact, it is clearly inconsistent with the Supreme Court's declaration that the decision of whether to grant a defendant specific performance or to allow him to withdraw from his plea is a decision best left to the "discretion of the state court, which is in a better position to decide [what relief is warranted]." *Santobello*, 404 U.S. at 263.

In addition to being wrong on the law, the majority ignores the fact that allowing Cuero to withdraw his plea placed him in the exact same position he was in prior to entering into the alleged initial plea agreement, which distinguishes this case from those cited by the majority. *See Cuero*, 827 F.3d at 890–91.[16] California contract law merely requires that the non-breaching party be made whole. Here, pursuant to the alleged initial plea agreement, Cuero gave up his right to trial, but he received that right back when the Superior Court approved the People's request to amend.

It is true that Cuero was deprived of receiving an unlawfully generous sentence, but this is of no moment. California law did not clearly establish that, under these circumstances, a defendant is entitled to re-acquire something he should have never gotten in the first place; instead, it indicated just the opposite. *See Alvarado*, 207 Cal. App. 3d at 477 ("Although probation ineligibility is prejudicial in the sense that Alvarado would rather it not be alleged, the allegation here does not cause prejudice to Alvarado's substantial rights. In fact, the amendment merely places Alvarado in the position he should have been in at the time of his arraignment in municipal court had he not used an alias and entered an immediate guilty plea under section 859a."). A reasonable judge might well conclude that the appropriate remedy in this case was to allow Cuero to withdraw from his

---

[16] The three cases cited by the majority in which specific performance was ordered involved defendants who, in reliance on their plea agreements, took actions that could not be undone. *See Buckley*, 441 F.3d 688 (testifying against codefendants); *Brown v. Poole*, 337 F.3d 1155 (9th Cir. 2003) (serving as a model inmate during her first few years in confinement); *In re Timothy N.*, 216 Cal. App. 4th 725 (2013) (successfully completing probation).

initial plea rather than order the People to perform specifically the alleged initial plea agreement.

In sum, following the People's motion to amend the complaint, the Superior Court held a hearing, considered Cuero's opposition to the motion, and, exercising its statutorily given authority, determined that the People's motion should be granted.  Further, after making this determination, the Superior Court afforded Cuero the opportunity to withdraw from his plea, of which he took advantage.  Nothing in this sequence of events is inconsistent with state law or established Supreme Court precedent.  As a result, there is no due process violation, the Superior Court did not err, and Cuero is not entitled to habeas relief.

**B.  The majority's opinion intrudes upon the just and orderly administration of justice in California and possibly other states within the Ninth Circuit.**

"It goes without saying that preventing and dealing with crime is much more the business of the States than it is of the Federal Government, and that [federal courts] should not lightly construe the Constitution so as to intrude upon the administration of justice by the individual States." *Medina v. California*, 505 U.S. 437, 445 (1992) (citation omitted) (quoting *Patterson v. New York*, 432 U.S. 197, 201 (1977)). Accordingly, federal courts may use the Due Process Clause to override a state's prescribed criminal procedure only when the procedure "offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Id.* (quoting *Patterson*, 432 U.S. at 202).

Today, plea agreements play an instrumental part in our criminal justice system. *See Santobello*, 404 U.S. at 261; *see*

*also Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012) ("Ninety-seven percent of federal convictions and ninety-four percent of state convictions are the result of guilty pleas."). The majority appears blind to the practical implications of its ruling. Due to speedy trial concerns, as well as others, plea negotiations often begin immediately and a prosecutor may have less-than-complete or unclear information. In hopes of covering his sordid record, a defendant may use an alias or be less than forthcoming about his criminal history. Further, reports from the FBI, state and local law enforcement authorities, and presentence investigators may not be available. *Cf. Thompson v. Superior Court*, 91 Cal. App. 4th 144, 156 (2001) ("At the time of the preliminary hearing, the defendant's prior convictions may not be fully known to the People, especially if the defendant has used one or more aliases, or has suffered convictions in other states."). As a result, mistakes are bound to occur. Though we undoubtedly want state prosecutors to follow through with agreements they enter into, we should not impede their need to revive those agreements upon the discovery of additional information unless and until the Supreme Court clearly establishes that we may do so in the specific circumstances here. *See Medina*, 505 U.S. at 445; *see also Mabry*, 467 U.S. at 511 ("The Due Process Clause is not a code of ethics for prosecutors[.]").

The majority's ruling substantially interferes with California's criminal justice system. California law requires prosecutors to charge a defendant's prior serious and violent felonies, i.e., strikes. Without the safety valve created by California Penal Code sections 969.5, 1009, and 1192.5, prosecutors will be forced to choose between (a) pressing ahead with imperfect information and risk potentially violating California law and (b) refusing to negotiate until

complete information is received, potentially freeing dangerous individuals and taking to trial cases they otherwise would not. While Supreme Court precedent sometimes creates Hobson-like choices for law enforcement personnel, it has not done so in this particular context and one should not be foisted onto prosecutors within the Ninth Circuit.

## III.  CONCLUSION

If past behavior is any indication of future behavior, Michael Cuero is well on his way to serving a life sentence on an installment plan. Unfortunately, each new installment likely means that Cuero has victimized yet another person whose life, like Jeffrey Feldman's, will never be the same. The true injustice here is that Cuero will not have to serve the sentence that the Superior Court legally imposed. In failing to follow the Supreme Court's direction to defer to the state court's reasonable determination, the majority has not only deprived Jeffrey Feldman and his family of the justice to which they are entitled, but has also stripped California of a tool used to ensure that criminal defendants receive sentences that are commensurate with all of the offenses they have committed. Such meddling by a federal court in a state's criminal justice process should only occur when required by clearly established Supreme Court precedent. Because no such precedent exists here, I respectfully dissent from our refusal to rehear this case *en banc*.