Filed 2/27/25  In re R.C. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re R.C., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>              v.<br><br>R.C.,<br><br>    Defendant and Appellant. | A169569<br><br>(Contra Costa County<br>Super. Ct. No. J2200620) |

In this Welfare and Institutions Code section 602[1] proceeding, Minor R.C. seeks review of a juvenile court ruling rejecting his section 786 request for dismissal of the delinquency charges against him, and for sealing of all records pertaining to those charges.

R.C. argues we must reverse for abuse of discretion because he substantially complied with the terms and conditions of his probation. Alternatively, he seeks modification of a probation condition he contends is unconstitutionally vague on its face.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

Because the juvenile court's section 786 ruling is supported by substantial evidence of poor school attendance and lack of community service efforts, indicating failure to substantially comply with two conditions of probation the court considered to be essential, we will sustain the ruling.

We agree with the People that R.C.'s vagueness claim is untimely and that as a result we lack jurisdiction to consider it. We therefore dismiss the appeal to the extent R.C. argues vagueness, and we otherwise affirm.

## I. BACKGROUND

### A. *The Juvenile Wardship Petition and Initial Proceedings*

On December 20, 2022, the Contra Costa County District Attorney filed a juvenile wardship petition alleging R.C., then 15 years old, had committed two offenses: possessing a loaded firearm by a prohibited person (Pen. Code, § 25850, subds. (a), (c)(4)) and carrying a concealed firearm (Pen. Code, § 25400, subds. (a)(1), (c)(4)).

A January 22, 2024 probation report summarizes the factual circumstances underlying these allegations. The report indicates that in December 2022, R.C. and two other individuals attempted to rob a drug dealer they had arranged to meet in a park, supposedly to buy marijuana. When they met him, they fled with his marijuana. The dealer shot at them and one of the individuals was hit and died as a result. R.C. was arrested near the incident with a loaded firearm with a high capacity magazine and a bag of marijuana in his possession.

In December 2022, R.C. pleaded no contest to the carrying a concealed firearm allegation; the Contra Costa County juvenile court sustained the allegation, and granted the prosecution's motion to dismiss the other charge. The case was then transferred to the juvenile court in Alameda County, where R.C. was determined to be living with his mother, for disposition.

2

**B.** *R.C. Is Placed at Home Under Probation Department Supervision*

The Alameda County juvenile court held a dispositional hearing in January 2023. The court adjudged R.C. a ward of the court and ordered him placed at his mother's home under the supervision of his probation officer and subject to various terms and conditions of probation.

These terms and conditions included that he "not stay away from home unless with a parent or legal guardian or without prior permission of the probation officer"; be at his place of residence by 7 p.m. every day unless with a parent or legal guardian or with prior permission of the probation officer; "[a]ttend school regularly," "not own, use, possess or be under the influence of any alcoholic beverage or illegal substance" and be subject to chemical testing; not possess, own, or handle any firearm, knife, or weapon, among other things; and "[p]erform 40 hours of community service work to be arranged by the minor with the approval of the Probation Officer." R.C., his mother, and his father signed the probation department's home supervision contract pledging their cooperation.

**C.** *R.C.'s Mixed Performance in the First Part of 2023*

In a mid-February 2023 progress report, the probation department wrote in relevant part that R.C. was yet to attend school because, although enrolled, he was waiting for a school placement that could accommodate his Individualized Education Program (IEP). Also, on February 6, 2023, R.C. tested positive for THC in a urine analysis. He had yet to submit any completed hours of community service to the department, but told his probation officer he could perform the hours at his church.

In a late March 2023 report, the department wrote that R.C. was not yet attending school because he was still waiting for a school placement. He again tested positive for THC on March 16, 2023, and he admitted to this use.

3

He had not yet submitted any completed hours of community service to his probation officer.

In April 2023, R.C.'s case was transferred back to Contra Costa County juvenile court because he had moved to that county with his mother. Upon this transfer, the juvenile court ordered that all prior orders remained in effect.

The court then held a disposition hearing, conducting sessions of it on May 10, 2023 and May 31, 2023. At the May 31 hearing, R.C.'s counsel explained the difficulties with finding a school placement for R.C. due to his IEP and indicated hope that a placement could be arranged soon. The court said it was glad for this progress. It then expressed its concern about R.C.'s marijuana use, noting that "your mom had indicated that is an issue." The court was particularly concerned because, it said, regular marijuana usage could stunt the development of R.C.'s still-forming brain. It kept in place the previous terms and conditions of probation that we have discussed and scheduled a one-year probation review hearing for January 22, 2024. The court added that it would give R.C. community service credit for good grades, specifically that it would reduce his service hours by five hours for every "A" and two-and-a-half hours for every "B."

### D. *The Probation Department's January 2024 Progress Report*

On the day of the January 22, 2024 review hearing, the probation department filed a progress report with the court. The department wrote that R.C. had tested negative for all illicit substances in four drug tests, administered in June, August, September, and December of 2023. He began attending a school that could accommodate his IEP on November 28, 2023. He did not have any disciplinary issues at the school and had not sustained any new law violations since he was adjudged a ward of the juvenile court

4

system.  His first semester report card from the school, attached to the report, indicates he received two C- grades, one C, one B, two A's, and a grade that is not clear but appears to be either a C+ or a C-.

However, the department further reported, R.C. had been absent from the school without excuse for five days of the approximately four and a half weeks of school days that had occurred since his enrollment.  The report card indicates he was only present for 12 of 21 school days since his enrollment, having also had four excused absences.

Further, the department wrote, R.C. had not participated in the court-ordered 40 hours of community service required of him.  It detailed an extensive effort to assist R.C. in fulfilling this requirement.

That is, in June 2023, the department provided him with a list of non-profit organizations in East Contra Costa County with which he potentially could do his community service hours.  However, his mother (Mother) did not want him participating with organizations in that area and said he would complete his community service hours at a non-profit organization located in San Francisco.

In August 2023, the reporting probation officer advised R.C. to start volunteering at a non-profit in order to complete his community service hours.  R.C. "insisted he would complete his hours in San Francsico, as his uncle was able to transport him there."

Subsequently, the probation officer again reminded R.C. about his community services hours, told him to start completing them, and provided him with a list of non-profit organizations in the Brentwood area, where he lived.  In January 2024, the officer gave him a referral to a Concord community youth center that could provide him with a variety of community service opportunities.

5

Also, the department wrote, a youth intervention specialist was assisting R.C. with finding organizations with which he could engage in community service. She also reported that his school principal was willing to talk to R.C. about fulfilling his community service requirement on campus.

Despite all of these efforts, the only indication that R.C. attempted to participate in community service was his report to the department that he attempted unsuccessfully to volunteer at an animal shelter that did not need volunteers at the time. The department recommended that the court schedule another review hearing in two months to give R.C. the time to complete his community service requirement.

### E. *The January 2024 Review Hearing*

At the January 22, 2024 review hearing, R.C.'s counsel asked the juvenile court to find that R.C. had satisfactorily completed his term of probation and order his record sealed, which the court was authorized to do under section 786. Citing *In re A.V.* (2017) 11 Cal.App.5th 697 (*A.V.*), R.C.'s counsel conceded that R.C. had not satisfied his 40-hour community service requirement. However, counsel argued, under the law R.C. had "satisfactorily completed a term of probation" because the law did not require that he "perfectly" comply with all of his terms and satisfy "every single term." Counsel further contended that "the most important thing" was that R.C. had not committed a new offense and tested negative on all drug tests. He also noted that R.C. had received two A's and a B the previous semester, contending these were grades that should count towards his 40 community service hours under the guidelines previously set by the court.

R.C.'s counsel then represented that "one of the challenges" R.C. faced in completing his community service requirement was "related to his mother's health." Counsel said she suffered from Type 1 diabetes and had

6

"frequently been in and out of the hospital." Counsel continued, "When I first met [R.C.] over a year ago, she was actually in a coma for . . . 2 weeks, and she is frequently hospitalized because of dips in her health. And so [R.C.] has, after school, had to pitch in a lot to help care for his younger brother to help out around the house, which has meant that he has had less free time to do community service and other things." R.C. had tried to volunteer at the animal shelter, and was focusing on school, caring for his younger brother, and helping out around the house," which counsel contended was enough to satisfactorily complete his term of probation.

The prosecutor opposed R.C.'s request. He argued R.C. had not satisfactorily completed the term of his probation because, even putting aside the community service issue, R.C.'s unexcused absences from about a quarter of his school days since his latest enrollment were "concerning." He asked the court to continue with R.C.'s term of probation so that R.C. could complete them appropriately. The probation department representative at the hearing agreed with these comments.

After counsel submitted the matter, the court stated, "I would disagree with [R.C.'s counsel's] categorization of what the law requires, and I don't think that this is a close call. The court focused first on R.C.'s poor school attendance, noting, "It appears from this report card that [R.C.] attended 12 days of school last year, for this particular semester, and thus far, according to the probation report, he already has 5 absences," although the court was confused about the timing of these absences.

The court turned to R.C.'s failure to fulfill his community service requirement: "[R.C.] has also been provided ample opportunities to comply with the requirements to complete his community service hours, and there have been a number of different workarounds that Probation has tried to

7

provide for him to get started on those. He has yet to do so, and that is going back from—the first time we spoke about this was back in May." The court then ruled, stating, "So I am afraid that there is not an indication in this particular case . . . that he has substantially complied with the terms of his probation. [¶] So we will be coming back in a couple of months."

After the court ruled, Mother asked to speak. She told the court that it was "not like" R.C. had not done his community service. She was in the hospital "every other week," had "flatlined" two months before in front of her children, and had just gotten out of the hospital a couple of days before. She was "very, very sick." As a result, it was hard for R.C. to attend any community service opportunity because she was the only driver in the house. She added that he missed school when he had COVID and she had to go the hospital.

The court expressed its sympathies to Mother for her poor health. It then recalled that R.C.'s uncle was going to take R.C. to his community service and that his father was "involved." Mother responded that "[h]e" was not helping, R.C., was not really "seeing him like that," and "he" was not going to take him to community service because he lived "way in Hayward"; the nature and context of these remarks indicates Mother was referring to R.C.'s father, whom she had said a few moments before lived in Hayward. The court responded that the probation department would see what could be done to help R.C. complete his community service hours on his school campus, encouraged R.C. to do so, scheduled the next review hearing for March 27, 2024, and ended the hearing.

R.C. filed a timely notice of appeal from the court's denial of his "motion to terminate his probation satisfactorily pursuant to Welfare and Institutions Code [section] 786."

8

## II. DISCUSSION

### A. *The Court Did Not Abuse Its Discretion in Rejecting R.C.'s Motion*

R.C. first argues the juvenile court abused its discretion by rejecting his motion for a ruling that he had satisfactorily completed his term of probation and an order sealing the record of his case, making much the same arguments as those he asserted below. We are not persuaded.

### 1. Relevant Legal Standards

Section 786 provides in relevant part that a minor who satisfactorily completes a term of probation shall have his petition dismissed and his records sealed. (§ 786, subd. (a).) Section 786 states that "satisfactory completion" "is deemed to have occurred if the person has no new findings of wardship or conviction for a felony offense or a misdemeanor involving moral turpitude during the period of supervision or probation and if the person has not failed to substantially comply with the reasonable orders of supervision or probation that are within their capacity to perform." (§ 786, subd. (c)(1).)

R.C. relies heavily on *A.V.*'s interpretation of these requirements. The *A.V.* court, a panel of Division One of this District, explained, "[S]ection 786 requires only 'satisfactory completion' with probation and, to underscore the point, specifically defines 'satisfactory completion' as 'substantial[] compl[iance].' (§ 786, subd. (c)(1).)" (*A.V.*, *supra*, 11 Cal.App.5th at p. 709.) The court continued, quoting the Merriam-Webster's Dictionary of Law, "Substantial compliance is not perfect compliance. Substantial compliance is commonly understood to mean 'compliance with the substantial or essential requirements of something (as a statute or contract) that satisfies its purpose or objective even though its formal requirements are not complied with.' " (*A.V.*, at p. 709.)

A juvenile court must determine, in its "discretionary estimation," whether a minor has " 'substantially complied' with the essential requirements of his probation, such that he ha[s] demonstrably achieved the rehabilitative goals of probation." (*A.V.*, *supra*, 11 Cal.App.5th at p. 711.) Accordingly, we review the court's ruling here for abuse of discretion. (*Id*. at p. 701.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.)

Also, under the abuse of discretion standard, we review the record to determine if the court's factual findings are supported by substantial evidence. (E.g., *In re S.S.* (2023) 89 Cal.App.5th 1277, 1288.) In determining whether there is such substantial evidence, " ' "an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value," ' " from which a rational fact finder could reach the factual finding at issue. (*In re George T.* (2004) 33 Cal.4th 620, 630–631.)

### 2. Analysis

Under such a deferential standard of review, R.C. must clear a high hurdle to show abuse of discretion here. He does not. Drawing inferences in favor of the juvenile court's ruling, as we must, we decline to disturb the court's determination that, as of the time R.C. made his section 786 request, he failed to show substantial compliance with two probation conditions the court focused upon as essential—that he "[a]ttend school regularly," and that he "[p]erform 40 hours of community service." The court indicated its belief that R.C. still had a chance to earn eligibility for section 786 relief, but needed more time to do so. That is a judgment a juvenile court has the prerogative to make.

10

As for school attendance, R.C. had only recently been able to enroll in school and had missed most of 2023 school year, the record suggesting that this was not his own fault. Nonetheless, he had only had 21 days of schooling in the course of the year, and he did not attend even those modest number of days with regularity. All told, he attended school for only about 57 percent of those days—12—which included four excused absences and five *unexcused* absences. He offered no evidence to explain those unexcused absences (although, as we will discuss, he contends that he did). And he does not and cannot argue that attending school was not an essential requirement of his probation. Regardless of the fact that a few of his grades were good (although more of them were not so good), that he did not present evidence explaining his absence from about a quarter of the school days available to him could be a basis by itself for the court to reasonably conclude that he was not in substantial compliance with the terms of his probation and, therefore, had not satisfactorily completed his term of probation.

When we move past the issue of grades, his school record was better than his virtually nonexistent community service record. There is no indication in the record that R.C. completed *any* of the 40 community service hours he was ordered to engage in over his one year of probation (not including any relatively small amount of credit for grades that he might have been due by court order), or made any effort to complete those hours beyond *one* unsuccessful inquiry to an animal shelter. On the other hand, there *are* indications in the record that he repeatedly represented that he was prepared to complete those hours—first at his church and then at an unspecified organization in San Francisco—but no evidence that he actually tried to do so at those or any other places. And despite receiving multiple suggestions and referrals from his probation officer for how he might complete his hours—

11

including regarding a community youth center in Concord, non-profits in his hometown of Brentwood, and ultimately at his own school—nothing in the record suggests he acted on any of these suggestions and referrals, or even was amenable to pursuing them.

Further, R.C. offers no legitimate reason why the court could not consider his community service requirement to be an essential condition of his probation. Indeed, the record indicates it was treated by all as such—it was ordered from the beginning of his probation, emphasized by the court in May 2023, and repeatedly brought up by his probation officer. The court could reasonably conclude community service was particularly essential in light of the serious, anti-social offense that was the basis for his wardship— he was found to have been carrying a concealed firearm at the age of 15, soon after the shooting death of one of his associates in the course of an attempted robbery of a drug dealer, for which R.C. was at the very least present with that associate and another one.

R.C. does not seriously challenge any of this evidence. Rather, he points to his lack of further offenses, his grades, his negative drug tests, and his purported helping out at home as demonstrating that he "completed nearly all requirements" of his probation and as indicators of substantial compliance. This ignores the significance with which the court viewed his school attendance and community service. The court could reasonably conclude they were core requirements with which R.C. did not substantially comply, and deny his motion on that basis.

R.C. attempts to explain away his community service non-compliance by contending he lacked the capacity to perform it. He bases this assertion on the unsworn representations made at the January 2024 hearing by his counsel and, after the matter was submitted and the court had issued its

12

ruling, by Mother. But he ignores that these representations, none of which was subject to cross-examination, were not in evidence and therefore cannot be credited on appeal. (*In re Zeth S.* (2003) 31 Cal.4th 396, 413–414, fn. 11 ["It is axiomatic that the unsworn statements of counsel are not evidence"]; *In re Heather H.* (1988) 200 Cal.App.3d 91, 95 [unsworn representations by counsel are not evidence].)

R.C. contends that the juvenile court "credited mother's statements that [R.C.] lacked transportation" by suggesting that the probation department "see what could be done for [R.C.] to complete his community service hours on his school campus." The court gave no such credit and made no finding regarding Mother's credibility. Rather, the record is clear that it ruled *before* Mother made her comments. Its remark was nothing more than a suggestion of a path by which R.C. could fulfill his community service hours before the next review hearing.

All in all, R.C. provides rhetorical support but no evidence in support of his motion, thereby failing to meet his burden as the moving party. (See *People v. Ochoa* (2016) 248 Cal.App.4th 15, 29, fn. 3 ["Generally, the moving party bears the burden to put the supporting evidence before the court."].) His appeal fails for this reason alone. Even if we were to consider the unsworn representations of R.C.'s counsel and Mother as having some weight, they do not establish that R.C. lacked the capacity to perform his community service. His counsel merely stated that as a result of Mother's poor health, R.C. "has had less free time to do community service and other things," thereby indicating R.C. *did* have the capacity, i.e., some free hours, to perform at least a portion of his required hours. His reported inquiry to the animal shelter is a further indication of this.

Despite Mother's representation that her chronic illness meant that she, the only driver in the household, could not take R.C. anywhere to perform his community service, she never stated that R.C.'s uncle—whom she had previously represented to the probation department would take R.C. to San Francisco to perform his community service—was unavailable when the court raised that possibility. Mother merely indicated that R.C.'s *father* was not available. The representations of R.C.'s counsel and his mother indicate only that R.C.'s priorities were in helping out his family in light of his Mother's illness and did not include community service. R.C. offers no reason, and we see none, for why the court was required to accept his priorities as a valid excuse for his repeated failure and apparent unwillingness to comply with an essential condition of probation—that he perform his community service hours.

Furthermore, Mother's assertion that R.C. did not attend school both because he had COVID and she had to go to the hospital falls short of being convincing in light of the evidence that R.C. *could* be excused from school, and was excused four times in 21 days. It is the *unexcused* absences that most concerned the court. The court could reasonably infer from the record, even considering Mother's post-ruling representations, that R.C. did not establish a good reason for them.

R.C. also contends he performed better than the minor in *A.V.*, pointing out that the appellate court there affirmed the juvenile court's determination that the minor had substantially complied with the terms and conditions of his probation. (*A.V.*, *supra*, 11 Cal.App.5th at p. 711.) We disagree that the minor performed worse than R.C. Although the minor had mixed grades in school, the case discussion indicates he attended it far longer and more regularly than R.C. While he used marijuana and cocaine and failed four

chemical tests early on, thereby violating his deferred entry of judgment (DEJ) probation terms and leading to the court vacating DEJ, he then passed 14 chemical tests. (*Id*. at pp. 702, 711.) He also completed 150 hours of community service, a drug and alcohol program, was exemplary in his behavior at home, and held employment after school. (*Id*. at p. 711.)

R.C.'s performance did not compare favorably with that of the minor in *A.V.*, particularly regarding school attendance and community service. But regardless, the *A.V.* court merely affirmed a juvenile court ruling under the abuse of discretion standard—meaning that it did not find the juvenile court's discretionary determination that the minor had substantially complied with the terms of his probation to be unreasonable. In short, its holding does nothing for R.C.'s cause here.

Finally, R.C., citing *A.V.*, contends the juvenile court abused its discretion by failing to follow the " 'passing grade' " legal standard of substantial compliance contained in the legislative history of section 786. (See *A.V.*, *supra*, 11 Cal.App.5th at pp. 708–709.) His counsel argued below that this standard requires only the equivalent of a " 'D' minus" grade, and that R.C. had "definitely done far better" than that. The court responded, "I would disagree with that categorization of what the law requires, and I don't think that this is a close call." It then discussed R.C.'s poor record of school attendance and lack of community service.

We see no legal error in the court's remarks for two reasons. First, we do not agree with counsel that *A.V.* stands for the proposition that a mere "D minus" type of overall probation performance constitutes satisfactory completion of a term of probation. The legislative history R.C. cites refers to a " 'passing grade,' " but then comments merely that " '[m]any probation orders in delinquency cases are checklists of conditions that are difficult or

15

impossible for many adolescents to perform at an 'A' grade level' " (*A.V.*, *supra*, 11 Cal.App.5th at p. 708); this hardly indicates the Legislature's approval of an overall " 'D' minus" probation performance, assuming for the sake of argument that R.C. merits such a grade.

Second, as we have discussed, *A.V.* makes clear that "substantial compliance" means " 'compliance with the substantial or essential requirements of something . . . that satisfies its purpose or objective . . . .' " (*A.V.*, *supra*, 11 Cal.App.5th at p. 709.)  The court's remarks indicate it considered R.C.'s school attendance and community service performance to be essential requirements of his probation.  As we have discussed, substantial evidence supports the court's conclusion that he did not meet these requirements.[2]

In short, R.C.'s abuse of discretion argument lacks merit.

## B. *We Lack Jurisdiction to Consider R.C.'s Constitutional Claim*

R.C. also argues that one condition of his probation, which states, "Do not stay away from home unless with a parent or legal guardian or without prior permission of the probation officer," is unconstitutionally vague on its face, requiring modification.  The People oppose, arguing we lack jurisdiction to consider this claim because it is untimely and made pursuant to a defective notice of appeal, that R.C. forfeited it by his failure to object to the condition below, and that R.C. is wrong on the merits.  In his reply brief, R.C. "concedes

---

[2] R.C. also argues that *In re Timothy N.* (2013) 216 Cal.App.4th 725 is "instructive" in its definition of what constitutes the successful completion of probation.  That case in inapposite, having been decided before section 786's enactment (Stats. 2014, ch. 249, § 2) and having involved the lower court's interpretation of an undefined term—" 'successfully complete probation' "—in the parties' plea agreement, not a court ruling pursuant to any statutory terms relevant to this case.  (*In re Timothy N.*, at p. 727.)

that based on the notice of appeal, he cannot challenge his probation conditions," but "nonetheless urges the Court to address this issue to the extent that it interferes with his ability to complete community service," which potential interference he briefly mentions in his opening brief as well.

We agree with the People that we lack jurisdiction to consider R.C.'s constitutional challenge to the court's imposition of this condition because it is untimely made, an argument that R.C. does not address.

A minor may appeal a judgment in a Welfare and Institutions Code section 601 or 602 proceeding "in the same manner as any final judgment." (§ 800, subd. (a)(1).) The judgments or orders of a juvenile court " 'which are appealable are restricted to those enumerated in section 800 . . . .' " (*In re Henry S.* (2006) 140 Cal.App.4th 248, 255.) " '[T]he "judgment" in a juvenile court proceeding is the order made after the trial court has found facts establishing juvenile court jurisdiction and has conducted a hearing into the proper disposition to be made.' " (*Ibid*.) In other words, the appealable "judgment" in a juvenile court proceeding is the dispositional order. (*Ibid*.; see *In re S.B.* (2009) 46 Cal.4th 529, 531–532 [noting the same regarding appealable orders under section 395, the equivalent of section 800 in dependency cases].) And " ' "[a] consequence . . . is that an unappealed disposition or postdisposition order is final and binding and may not be attacked on an appeal from a later appealable order." ' " (*In re S.B.*, at p. 532 [regarding section 395].)

In juvenile cases, "a notice of appeal must be filed within 60 days after the rendition of the judgment or the making of the order being appealed," with exceptions not applicable here. (Cal. Rules of Court, rule 8.406(a)(1).) The timely filing of the notice of appeal is jurisdictional. " 'Compliance with the time for filing a notice of appeal is mandatory and jurisdictional.

[Citations.] If a notice of appeal is not timely, the appellate court must dismiss the appeal.' " (*Ellis v. Ellis* (2015) 235 Cal.App.4th 837, 842, quoting *Laraway v. Pasadena Unified School Dist.* (2002) 98 Cal.App.4th 579, 582, disapproved of on another ground in *Meinhardt v. City of Sunnyvale* (2024) 16 Cal.5th 643, 663, fn. 14.)

Here, the challenged probation condition was first ordered by the Alameda County juvenile court in a January 2023 dispositional order. As we have discussed, R.C.'s case was later transferred back to the juvenile court in Contra Costa County, where it had been initiated. The latest order containing the condition, and the one R.C. relies on for his constitutional claim, was a dispositional order issued by the Contra Costa County juvenile court on May 31, 2023. Assuming for the sake of argument that the portion of the May 31, 2023 order containing the condition was appealable despite the finality of the initial dispositional order, the latest R.C. could have challenged the condition he complains of was at the end of July 2023, 60 days after the issuance of the May 31, 2023 order and almost six months before R.C. filed his appeal from the January 22, 2024 review hearing order. Therefore, he did not timely appeal from the condition he challenges, we lack jurisdiction to consider his constitutional claim, and we must dismiss that part of his appeal.

In light of our conclusion, we do not discuss the other issues the parties raise regarding this claim, except for R.C.'s request that we address his constitutional claim to the extent the vagueness of the challenged condition interferes going forward with his ability to complete community service. Because R.C. did not raise this argument below and it was never ruled on by the juvenile court, he failed to preserve it for appeal. We do not generally issue advisory opinions as a court of first instance, and decline to do so here.

18

(See, e.g., *Barber Group, Inc. v. New Motor Vehicle Bd.* (2023) 93 Cal.App.5th 1025, 1035, fn. 2 [in writ of mandate appeal, declining to consider "in the first instance" jurisdictional questions that the administrative agency did not adjudicate], quoting *People v. Chadd* (1981) 28 Cal.3d 739, 746 (plur. opn.) ["We will not . . . adjudicate hypothetical claims or render purely advisory opinions"].)

## III. DISPOSITION

The part of R.C.'s appeal in which he raises his constitutional claim is dismissed.  The order appealed from is otherwise affirmed.


STREETER, J.

WE CONCUR:

BROWN, P. J.
GOLDMAN, J.